ABT GALVESTON LIMITED PART-NERSHIP and the CIT Group/Equip-ment Financing, Inc., Appellants,

v.

GALVESTON CENTRAL APPRAISAL DISTRICT, City of Galveston, Galves-ton County, Galveston Community College District, Galveston Indepen-dent School District, and Galveston County Navigation District No. 1, Ap-pellees.

No. 01–01–00956–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 30, 2004.

Ben L. Aderholt, Looper, Reed & McGraw, Houston, TX, for Appellants.

Kenneth J. Bower, Anthony P. Brown, McLeod, Alexander, Powell & Apffel, P.C., Galveston, TX, for for Appellee Galveston Central Appraisal District.

John J. Hightower, Scott Bounds, Houston, TX, for Appellees City of Galveston, TX, Galveston I.S.D., and Galveston Community College.

Donald Glywasky, Barry Willey, Galveston, TX, for Appellee Galveston County.

William Rider, Galveston, TX, for Appellee Galveston Navigation District No. 1.

Panel consists of Justices TERRY JENNINGS, ALCALA, and HEDGES.*

## OPINION

TERRY JENNINGS, Justice.

Appellants, ABT Galveston Limited Partnership (ABT) and The CIT Group/Equipment Financing, Inc. (CIT), challenge the trial court's rendition of summary judgment against them on their claims regarding the cancellation of ad valorem property tax exemptions, the "unlawful assessment and collection of property taxes," and interest due on overpaid ad valorem property taxes brought against appellee, the Galveston Central Appraisal District (GCAD), and appellees, the City of Galveston (the City), Galveston County (the County), the Galveston Community College District (GCCD), the Galveston Independent School District (GISD), and Galveston County Navigation District No. 1 (the Navigation District) (collectively, the taxing authorities).

In two issues, ABT and CIT contend that the trial court erred in granting (1) GCAD's motion for summary judgment and (2) the taxing authorities, motion for summary judgment. We affirm.

## Facts and Procedural Background

In 1994, ABT, a lessee of certain tracts of property located at the Port of Galveston and owned by the City of Galveston Wharves Board, and the taxing authorities executed separate ad valorem property tax

---

* The Hon. Adele Hedges, formerly a Justice of the Court of Appeals, First District of Texas at Houston, became Chief Justice of the Court of Appeals, Fourteenth District of Texas at Houston, on December 8, 2003 and continues to participate by assignment for the disposition of this case, which was submitted before that date.

abatement agreements[1] in anticipation of ABT's construction of an automated grain bagging and loading facility at the Port. The agreements provided that, in exchange for completing the proposed construction and capital improvements, estimated at $23 million,[2] ABT would receive, for a period of seven years after completing construction, tax exemptions on the full amount of the increases in value to the certified appraised value of the property resulting from the improvements.

Each of the abatement agreements provided that the pertinent taxing authority could declare its agreement in default if ABT did not comply with its obligations, including its obligations to (1) make the agreed upon improvements and (2) pay timely any ad valorem taxes owed on the property.[3] Each agreement required the taxing authorities to give ABT written notice of, and 60 days to cure, any alleged default before cancelling the exemption. ABT's agreements with the City, GISD, GCCD, and the Navigation District also included a "recapture" clause, which read as follows:

> In the event that the facility is completed and begins producing products or services, but thereafter discontinues producing products or services for any reason excepting fire, explosion or other casualty or accident or natural disaster for a period of one (1) year during the abatement, then this Agreement shall terminate and so shall the abatement of

the taxes for the calendar year during which the facility no longer produces. The taxes otherwise abated for that calendar year shall be paid to the affected jurisdiction within sixty (60) days from the date of termination.[4]

ABT obtained financing for the project from CIT and, in early 1996, completed the construction of the facility and began operations. In April 1996, ABT filed its application for a property tax exemption, pursuant to the terms of the abatement agreements. GCAD retained Capitol Appraisal Group, Inc. to appraise the value of the facility. On June 16, 1996, Michael Durham, who was ABT's financial planner and had previously been employed as a Deputy Chief Appraiser for GCAD, received a fax from Capitol Appraisal Group (CAG), informing him that CAG had determined that the market value of the facility was $21,670,900. GCAD's certified appraisal roll reflected this value as of July 1996.[5]

ABT's business was financially unsuccessful and, by the end of June 1996, ABT had stopped repayment of its loan obligations to CIT and had ceased operations at the facility. In September 1996, CIT decided to foreclose on the assets at the facility and to locate an outside party to purchase them. CIT subsequently began negotiations to sell the facility's movable assets to the Port of Lake Charles, Louisiana. By letter dated October 17, 1996, Timothy Bennett, a CIT vice president,

---

1. *See* TEX. TAX CODE ANN. §§ 312.204, 312.206, & 312.402 (Vernon 2002 & Supp.2004).

2. The Port of Galveston, who is not a party to this suit, was to pay $450,000 of this cost.

3. As an additional obligation, some of the agreements required ABT to have at least 20 full-time employees at the facility during the term of the abatement.

4. The abatement agreement executed between ABT and the County also included a "recap-

ture" clause. Contrary to ABT's and CIT's assertions before the trial court and to this Court, that agreement is the only one that specifically prohibited the recapture of prior years' taxes that had been abated by virtue of that agreement.

5. This appraisal roll also listed ABT as the "owner" of the facility and reflected ABT's correct street address.

solicited an offer from the Port of Lake Charles to purchase the facility's movable assets for $15.5 million. According to Bennett's deposition testimony, the Port of Lake Charles agreed to purchase the facility's assets for $14,375,000 within "a matter of weeks."

At a meeting held at the end of October 1996, representatives of the taxing authorities informed representatives of ABT and CIT that, if any assets of the facility were sold with the intent to move them out of Galveston County, a tax lien would be applied to those assets and the assets would not be permitted to leave the property without satisfaction of the lien.[6] Following this meeting, GISD, the Navigation District, and the City all notified ABT—by letters dated October 25, November 1, and November 22, 1996, respectively—that ABT was in default of the abatement agreements.

At all relevant times, Mary Ellen Reinarz, with Galveston Tax Collections, served as the tax assessor for GISD, the City, the Navigation District, and GCCD. On December 6, 1996, Reinarz sent CIT a consolidated tax bill indicating that the 1996 appraised value of the facility was $21,671,900 and demanding $491,780.93 as the amount of the 1996 property taxes due to GISD, the City, the Navigation District,

and GCCD by January 31, 1997. Also in December 1996, the governing bodies of those four taxing authorities voted to cancel the tax abatement agreements with ABT.[7]

On December 20, 1996, the County also notified ABT that it was in default of its tax abatement agreement with the County.[8] One week later, the County, also indicating that the 1996 appraised value of the facility was $21,671,900, demanded payment of $112,693.88 as the amount of the 1996 property tax due to the County by February 1, 1997. In January 1997, after Bennett had met with Reinarz to discuss the amount of the appraised value of the facility, CIT, on behalf of ABT, paid the full amount of the assessed 1996 taxes: $604,474.81.[9]

In March 1997, by private foreclosure sale, CIT foreclosed on and took ownership of the assets at the facility and sold them to the Port of Lake Charles for $14,355,000.[10] That same month, in response to a letter from Reinarz informing CIT that the facility and its moveable assets were subject to a tax lien to secure payment of 1997 property taxes, CIT prepaid the estimated total of the 1997 property taxes due to GISD, the City, the Navigation District, and GCCD:

**6.** Bennett testified that, at this meeting, he did not inform the taxing authorities of the status of the negotiations between CIT and the Port of Lake Charles.

**7.** By letter dated February 20, 1997, Jim Brown, Director of Special Projects for GCAD, notified CIT of the cancellation of these property tax abatements and that the property would be taxed at its "full taxable value of $21,671,900."

**8.** The Galveston County Commissioners Court voted to cancel the County's tax abatement agreement with ABT on March 13, 1997, and the County notified ABT of this action the following day. Two months later, Jim Brown

of GCAD sent CIT an additional notice of this action and informed CIT that the property would be taxed at its "full taxable value of $21,671,900."

**9.** Bennett testified by affidavit that, at the time that CIT paid the 1996 property taxes, Bennett orally informed Reinarz that CIT was doing so under protest.

**10.** There is no explanation in the record for the $20,000 difference between the agreed sale price, as listed in the March 13, 1997 asset purchase agreement, and the actual sale price, as reflected in the March 27, 1997 bill of sale.

$516,370.[11] Also in March 1997, CIT separately paid the estimated total of the 1997 property taxes due to the County: $111,563.40. By separate letters accompanying its payments to the taxing authorities, CIT specifically noted that it was paying the estimated 1997 property taxes "under protest, and ... reserv[ing] all rights of appeal."

The taxing authorities subsequently calculated the estimated 1997 property taxes; and GCAD sent ABT a "Notice of Appraised Value" showing a decrease in the facility's appraised value from $21,671,900 in 1996 to $21,454,500 in 1997. In April 1997, CIT filed a formal protest of the taxing authorities' estimated 1997 property taxes, and GCAD, on its appraisal roll, subsequently reduced the appraised value of the facility to $14,375,000, presumably reflecting the price that the Port of Lake Charles had agreed to pay CIT for the facility's assets. In September 1997, all of the taxing authorities adopted their respective 1997 tax rates, and, on October 21, 1997, the taxing authorities, with the exception of the County, issued a refund to CIT for the amount of its overpayment of the 1997 property taxes. In December 1997, the Galveston County Commissioners Court approved and issued a refund to ABT for overpayment of the 1997 property taxes.[12]

In May 1998, ABT and CIT sent GCAD a letter protesting GCAD's "failure to give notice under TEXAS TAX CODE § 41.411"[13] and requesting a hearing before the Galveston County Appraisal Review Board "to determine the 1996 appraised value" of the facility. GCAD denied the request for a hearing.

In October 1998, ABT and CIT filed suit against GCAD and the taxing authorities and, in their fifth amended petition, asserted claims for (1) breach and wrongful termination of the tax abatement agreements; (2) unlawful collection of the 1996 property taxes, which ABT and CIT alleged were paid "under duress"; (3) failure to appraise the value of the facility fairly and to provide proper notice of the appraised value of the facility; (4) violations of ABT's and CIT's constitutional rights to "due course of law"[14] and "due process,"[15] both of which violations were allegedly enforceable under federal law[16]; and (5) statutory interest due on the refunded portion of the 1997 property taxes.[17] As damages, ABT and CIT sought (1) a full refund of the 1996 tax payment or, in the alternative, a refund of the non-prorated portion of the 1996 property taxes and (2) interest on the refunded portion of the 1997 property taxes. ABT and CIT also sought equitable and declaratory relief, requesting that the trial court order GCAD to correct the 1996 tax appraisal roll to reflect the existence of

---

11. As of March 19, 1997, GCAD's 1996 supplemental appraisal roll indicated that the tax abatement had been removed and that the property was taxable at its full value of $21,671,900.

12. The County concedes that ABT did not receive the County's 1997 property tax refund check for more than a year, but contends that this delay was caused by the County's difficulty in locating ABT "due to ABT moving its offices."

13. See TEX. TAX CODE ANN. § 41.411 (Vernon 2001) (providing property owner with right to

protest appraisal district's failure "to provide or deliver any notice to which the property owner is entitled").

14. TEX. CONST. art. I, § 19.

15. U.S. CONST. amend. XIV.

16. See 42 U.S.C. §§ 1983, 1988 (2000).

17. ABT and CIT excepted GCAD from their claim for statutory interest on the refunded portion of the 1997 property taxes.

a property tax abatement on the facility for 1996.

GCAD and the taxing authorities answered the lawsuit, generally denied ABT's and CIT's claims, and asserted various affirmative defenses, including governmental immunity from suit and ABT's and CIT's alleged failure to exhaust administrative remedies before filing suit. GCAD, in its motion for summary judgment on all of ABT's and CIT's claims, asserted that it was entitled to judgment as a matter of law because (1) ABT and CIT had failed to exhaust the administrative remedies available to them under the Texas Property Tax Code ("the Code")[18] before filing suit on the collection of the 1996 property taxes, thus depriving the trial court of jurisdiction to consider their claims; (2) there was no evidence that ABT and CIT had paid the 1996 property taxes under duress; (3) GCAD was not a party to the property tax abatement agreements and could not be held liable for any alleged breach or wrongful termination of the agreements; and (4) GCAD did not violate the constitutional due course of law and due process rights of ABT and CIT.

The taxing authorities, in their motion for summary judgment, asserted that they were entitled to judgment as a matter of law because (1) the property tax abatement agreements were void or, alternatively, were properly cancelled following ABT's breach of the agreements; (2) ABT and CIT had failed to exhaust the administrative remedies available to them under the Code before filing suit on the collection of the 1996 property taxes, thus depriving the trial court of jurisdiction to consider their claims; (3) there was no evidence

that ABT and CIT had paid the 1996 taxes under duress; (4) ABT and CIT could not show either the existence or the violation of a constitutional due course of law or due process right; and (5) ABT and CIT were not entitled to interest on the refunded portion of the 1997 property taxes.

On December 8, 2000, the trial court signed an interlocutory summary judgment in favor of GCAD on all claims asserted against it by ABT and CIT. On September 20, 2001, the trial court signed a final summary judgment in favor of the remaining taxing authorities on all of ABT's and CIT's claims. In its summary judgments, the trial court did not state the specific grounds for its rulings.

## Standard of Review

■ Summary judgment is proper only if the evidence shows that there are no issues of material fact and that the moving party is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c).[19] We may affirm a summary judgment only when the record shows that a movant has disproved at least one element of each of the plaintiff's claims or established all the elements of an affirmative defense as to each claim. *Id.; American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true, and the court must indulge every reasonable inference and resolve any

---

**18.** *See* TEX. TAX CODE ANN. §§ 1.01–43.04 (Vernon 2001 & Supp.2004).

**19.** GCAD and the taxing authorities also asserted "no evidence" grounds for summary judgment in their respective motions. *See*

TEX.R. CIV. P. 166a(i). However, because, as noted below, we hold that their rule 166a(c) grounds are dispositive, we do not address the "no evidence" grounds.

doubts in favor of the non-movant. *Id.* at 548–49. Because the trial court did not state the specific grounds for its rulings granting summary judgments in favor of GCAD and the taxing authorities, we will affirm the judgment of the trial court if any of the theories advanced by GCAD and the taxing authorities in their respective motions for summary judgment is meritorious. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001).

As noted above, in their first and second issues, ABT and CIT contend that the trial court erred in rendering summary judgment in favor of GCAD and the taxing authorities. We consider these contentions in regard to ABT's and CIT's claims concerning the assessment and collection of the 1996 property taxes and the refunded portion of the 1997 property taxes, respectively.

### 1996 Property Tax Claims

In regard to ABT's and CIT's claims concerning the assessment and collection of the 1996 property taxes, GCAD and the taxing authorities asserted, as a threshold argument in their motions for summary judgment, that the trial court lacked jurisdiction to consider these claims because ABT and CIT did not timely avail themselves of and exhaust the administrative remedies set forth in the Code prior to filing suit.

 Section 42.09 of the Code provides that the "procedures prescribed by [the Code] for adjudication of the grounds of protest" authorized by the Code "are exclusive" and may not be raised as a basis for relief in a suit by a property owner. Tex. Tax Code Ann. § 42.09(a) (Vernon 2001). Because the administrative procedures established by the Code are exclusive of a taxpayer's other remedies, a taxpayer must first exhaust all administrative remedies before seeking judicial review of a taxing authority's actions. *Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.,* 826 S.W.2d 124, 125 (Tex.1992) (per curiam); *Webb County Appraisal Dist. v. New Laredo Hotel,* 792 S.W.2d 952, 954 (Tex.1990); *Denton Cent. Appraisal Dist. v. CIT Leasing Corp.,* 115 S.W.3d 261, 264 (Tex.App.-Fort Worth 2003, pet. denied); *Harris County Appraisal Dist. v. Dincans,* 882 S.W.2d 75, 77 (Tex.App.-Houston [14th Dist.] 1994, writ denied). A taxpayer's failure to pursue and to exhaust administrative remedies deprives a trial court of jurisdiction over the cause. *New Laredo Hotel,* 792 S.W.2d at 954; *Dincans,* 882 S.W.2d at 77.

In their petition, ABT and CIT alleged that GCAD and the taxing authorities had failed to deliver proper or timely notice of several taxing authority actions concerning the facility before attempting to collect property taxes for 1996. ABT and CIT contend that the failure of GCAD and the taxing authorities to provide proper or timely notice of these actions relieved ABT and CIT of their responsibility to exhaust the administrative remedies available to them under the Code before filing their lawsuit.

Specifically, ABT and CIT assert that GCAD and the taxing authorities failed to deliver proper notice of ABT's and CIT's alleged default of the tax abatement agreements and of the taxing authorities' decisions to cancel the property tax exemptions. ABT and CIT contend that the taxing authorities did not provide ABT and CIT with sufficient notice or time to cure any alleged defaults, under the terms of the property tax abatement agreements, before terminating the agreements and seeking to collect the 1996 property taxes assessed on the facility.

ABT and CIT also alleged that GCAD failed to provide ABT and CIT with proper

notice of the removal of the property tax exemption for 1996 and failed to deliver a notice of the 1996 appraised value of the facility that included an explanation of ABT's and CIT's rights to protest GCAD's appraisal of the value of the facility.

With regard to the cancellation of a property tax exemption, the Code provides as follows:

> If the chief appraiser learns of any reason indicating that an exemption previously allowed should be canceled, he shall investigate. If he determines that the property should not be exempt, he shall cancel the exemption and deliver written notice of the cancellation within five days after the date he makes the cancellation.

TEX. TAX CODE ANN. § 11.43(h) (Vernon Supp.2004). The Code also requires the chief appraiser of an appraisal district to deliver, by May 15th or "as soon thereafter as practicable," a clear and understandable written notice to a property owner of the appraised value of the property owner's property for the preceding year, including "a detailed explanation of the time and procedure for protesting the value." *Id.* § 25.19(a), (b)(7) (Vernon Supp.2004). Here, the record indicates that, as early as June 1996, ABT and CIT had been informally advised of the exact amount of the appraised value of the facility by the independent appraisal company hired by GCAD to appraise the facility. GCAD presented additional summary judgment evidence, in the form of affidavit testimony and exhibits, in support of its contention that its official notice of the appraised value of the facility, including instructions for filing a protest of the appraisal, was timely sent to ABT and CIT, as required under section 25.19 of the Code.

ABT and CIT objected to the summary judgment evidence presented by GCAD on the grounds that, (1) generally, the motion did not reference the summary judgment exhibits by exhibit or page number and ABT and CIT did not have sufficient notice of the evidence upon which GCAD relied in support of the motion and that (2) specifically, some of the statements contained within the affidavits constituted inadmissible hearsay on the issue of whether ABT and CIT received an official notice of the appraised value of the facility. As part of their first issue, ABT and CIT argue that the trial court erred in denying their general and specific objections to GCAD's summary judgment evidence.[20]

With regard to ABT's and CIT's objection to GCAD's failure to reference its summary judgment exhibits by exhibit or page number, the record indicates that, before the hearing on GCAD's motion for summary judgment, GCAD supplemented its motion with specific references to its summary judgment evidence. At the hearing, when the trial court questioned counsel for ABT and CIT as to whether this supplementation had "cured any objection," counsel for ABT and CIT responded in the affirmative. Thus, we hold that any objection to GCAD's initial failure to reference its summary judgment evidence specifically was waived. *See* TEX. R.APP. P. 33.1.

ABT and CIT deny that they timely received notice from GCAD and argue that the summary judgment evidence shows the existence of a material fact issue concerning whether such notice was delivered timely. Assuming, without deciding, that the taxing authorities failed to provide or did not deliver timely the notices of which

---

**20.** The trial court announced its rulings denying ABT's and CIT's evidentiary objections at the hearing on GCAD's motion for summary judgment, but did not sign an order memorializing its rulings.

ABT and CIT complain, we examine the record to determine whether ABT and CIT pursued and exhausted the Code's available administrative remedies.[21]

■ The Code provides a property owner with the right to protest an appraisal district's determination of the appraised value of the property, the denial of a tax exemption, or "any other action" that "applies to and adversely affects the property owner." TEX. TAX CODE ANN. § 41.41(a)(1), (4), (9) (Vernon 2001). To be entitled to a hearing and determination of its protest, a property owner must file a written notice of protest with the appropriate appraisal review board within 30 days of receiving the notice required under section 25.19. *Id.* § 41.44(a)(1) (Vernon 2001). A property owner who files its notice of protest after this deadline, but before the appraisal review board approves the appraisal records, may still obtain a hearing and a determination of the protest upon a showing of good cause for its failure to file a timely protest. *Id.* § 41.44(b) (Vernon 2001).

A property owner is also entitled to protest an appraisal district's failure "to provide or deliver any notice to which the property owner is entitled." *Id.* § 41.411(a) (Vernon 2001). If the failure to deliver such notice is established, the appraisal review board must then determine the property owner's protest on its merits. *Id.* § 41.411(b) (Vernon 2001). The Code provides that a property owner who files a notice of protest regarding the appraisal district's failure to provide or to deliver "any notice to which the property owner is entitled" has a right to a hearing and a determination of its protest if it (1) pays the amount of the taxes due on the portion of the taxable value of the property that is not in dispute before the delinquency date and (2) files its notice of protest before "the date the taxes on the property to which the notice applies becomes delinquent." *Id.* §§ 41.411, 41.44(c), 42.08(b) (Vernon 2001); *see CIT Leasing Corp.*, 115 S.W.3d at 264.[22]

Here, it is undisputed that CIT paid the full amount of the 1996 property taxes assessed on the facility before the delinquency date, which was February 1, 1997. However, ABT and CIT did not file a written protest of the 1996 property taxes or request a hearing regarding GCAD's "failure to give notice under TEXAS TAX CODE § 41.411" until May 1998. Accordingly, we hold that ABT and CIT did not timely pursue or exhaust the administrative remedies available under the Code to protest the actions of the taxing authorities concerning the assessment and collection of the 1996 property taxes. As noted above, a taxpayer's failure to pursue and to exhaust administrative remedies deprives a trial court of jurisdiction to hear the taxpayer's claims. *New Laredo Hotel,* 792 S.W.2d at 954; *Dincans,* 882 S.W.2d at 77.

ABT and CIT concede that, generally, a taxpayer must exhaust the Code's administrative remedies before filing a lawsuit against a taxing authority. They assert,

---

21. Because we assume, without deciding, that ABT and CIT presented summary judgment evidence sufficient to raise a material fact issue regarding their receipt of the complained of notices from GCAD, we need not address their contention that the trial court erred in denying their specific objections to GCAD's summary judgment evidence pertaining to this issue.

22. We note that the Code also provides that the "failure to receive the notice [of the appraised value of the property] does not affect the validity of the appraisal of the property, the imposition of any tax on the basis of that appraisal, the existence of any tax lien, or any proceeding to collect the tax." TEX. TAX CODE ANN. § 25.19(d) (Vernon Supp.2004).

however, that they were not required to exhaust the Code's administrative remedies to contest the actions of the taxing authorities in this case because the taxing authorities' alleged failure to deliver or timely to provide the notices to which ABT and CIT were entitled under the Code, and chiefly the failure to deliver the notice of the 1996 appraised value of the facility, deprived them of their constitutional rights of due process and due course of law. ABT and CIT argue that the taxing authorities' alleged failure to deliver or timely to provide such notices thus "absolve[d] [ABT and CIT] from pursuing administrative remedies before suing."

■ Collection of a tax constitutes a deprivation of property; therefore, a taxing authority must afford a property owner due process of law. *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Florida,* 496 U.S. 18, 36–37, 110 S.Ct. 2238, 2250–51, 110 L.Ed.2d 17 (1990); *Appraisal Review Bd. of El Paso v. Fisher,* 88 S.W.3d 807, 813 (Tex.App.-El Paso 2002, pet. denied); *see* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. However, "[d]ue process simply affords a right to be heard before final assessment; it does not detail the review mechanism." *Dallas County Appraisal Dist. v. Lal,* 701 S.W.2d 44, 47 (Tex.App.-Dallas 1985, writ ref'd n.r.e.). Texas courts have held that, in cases involving taxation, due process is satisfied if the taxpayer is given an opportunity to be heard before an assessment board at some stage of the proceedings. *CIT Leasing Corp.,* 115 S.W.3d at 266; *Lal,* 701 S.W.2d at 47.

As support for their contention that the taxing authorities' failure to deliver or timely to provide notices to which ABT and CIT were entitled excused their failure to pursue and to exhaust their available administrative remedies, ABT and CIT rely on *Valero South Texas Processing Co. v. Starr County Appraisal District,* 954 S.W.2d 863, 865–66 (Tex.App.-San Antonio 1997, writ denied), *Inwood Dad's Club v. Aldine Independent School District,* 882 S.W.2d 532, 538 (Tex. App–Houston [1st Dist.] 1994, no writ), *Fina Oil & Chemical Co. v. Port Neches Independent School District,* 861 S.W.2d 3, 6 (Tex.App.-Beaumont 1993, writ denied), *Harris County Appraisal Review Board v. General Electric Corp.,* 819 S.W.2d 915, 919 (Tex.App.-Houston [14th Dist.] 1991, writ denied), and *Garza v. Block Distributing Co.,* 696 S.W.2d 259, 261–62 (Tex.App.-San Antonio 1985, no writ). We find each of these cases inapplicable to the specific circumstances presented here.

In *Valero South Texas Processing Co. v. Starr County Appraisal District,* a property owner timely filed a protest of an appraisal district's property valuation of a gas processing plant and, after a hearing before the appraisal review board, the appraisal district sent the property owner a notice and an order concerning its decision on the protest. 954 S.W.2d at 864–65. The property owner then filed a protest concerning the district's failure to provide an order that properly identified the property owner and the property in question. *Id.* at 865. The trial court granted the taxing authorities' plea to the jurisdiction on the grounds that the property owner's suit was not filed within the statutorily prescribed 45–day period for appeal of an appraisal review board's final decision to the trial court. *Id.* at 865; *see* TEX. TAX CODE ANN. § 42.21 (Vernon 2001). The court of appeals subsequently agreed with the property owner that the notice delivered by the district was deficient, and the court held that the notice did not comply with the "constitutional requirements of due process" of apprising the property owner of the pendency of the action and

affording it an opportunity to present its objections. *Valero*, 954 S.W.2d at 866. The court further held that, as a result, the trial court's dismissal of the property owner's suit was improper. *Id.* However, we note that, in its opinion, the *Valero* court never addressed the application of section 41.44(c)'s requirement that a property owner file its protest about the absence of notice before "the date the taxes on the property to which the notice applies become delinquent" because, in that case, the property owner had timely filed its initial protest before the tax delinquency date.

This Court, in *Inwood Dad's Club, Inc. v. Aldine Independent School District*, reversed, in part, a trial court's judgment in favor of a taxing authority against a property owner which had previously been granted a property tax exemption based on its status as a charitable organization and which exemption was removed by an appraisal district without notice. 882 S.W.2d at 533–34. In the opinion, this Court held that the appraisal district lacked the authority to remove a tax exemption without notice to the property owner and that the removal of the exemption, without notice, was a void act. *Id.* at 538. In the present case, however, it is undisputed that ABT and CIT received written notice of the cancellations of the property tax exemptions directly from the taxing authorities as early as December 1996—cancellations that were confirmed later by additional notices from GCAD in 1997. ABT and CIT did not make any written protest of such notices as inadequate or untimely until May 1998.

In *Fina Oil & Chemical Co. v. Port Neches Independent School District*, a property owner sued a taxing authority based on the cancellation of a property tax abatement agreement. 861 S.W.2d at 4–5. The trial court dismissed the property owner's claims for want of jurisdiction, based on the property owner's failure to file a written protest of the cancellation of the exemption and to exhaust its administrative remedies before filing suit. *Id.* at 5. The court of appeals reversed the trial court's dismissal and held that, because the appraisal district had failed to provide sufficient notice to the property owner of the cancellation of the exemption, the property owner was not required to exhaust its administrative remedies before filing suit. *Id.* at 5–6. In setting out its holding, the *Fina* court stated as follows:

> [W]here a partial exemption is canceled by the chief appraiser as here and the chief appraiser fails to give notice of his action canceling the same within five days after the date he makes the cancellation, the property owner is not barred from prosecuting a suit against the taxing unit that contracted for the exemption by way of a tax abatement agreement.

*Id.* at 6–7. We note that, in reaching its holding, the *Fina* court did not address section 41.44(c), or any other authority, concerning the timeliness of a property owner's protest in the absence of a statutorily required notice, and we decline to follow its reasoning.[23]

In *Harris County Appraisal Review Board v. General Electric Corp.*, an appraisal review board appealed from a trial court's rendition of summary judgment in favor of a property owner on its claim that, after the property owner had timely paid its property taxes and filed a protest of the appraised value of the subject property,

---

**23.** We also note that, since its issuance in 1993, *Fina* has not been followed or cited by any other court in any other case in Texas.

the board failed to give the property owner a hearing on its protest. 819 S.W.2d at 917–18. The court of appeals affirmed the summary judgment in favor of the property owner and held, in part, as follows:

> To the extent that 41.411 (and 41.44(c)) requires the property owner who has filed a protest of the appraisal to file an *additional* protest of notice before the delinquency date, we hold that it constitutes an undue procedural limitation on a taxpayer's ability to assert its rights.

*Id.* at 919. However, because the property owner had timely filed its initial protest of the board's appraisal of the property, the court in *Harris County Appraisal Review Board* addressed circumstances markedly different from those in the present case.

Finally, in *Garza v. Block Distributing Co.*, the court of appeals held that, in the absence of any notice to a property owner, an appraisal board did not acquire jurisdiction to consider an increase in the appraised value of the subject property. 696 S.W.2d at 262. However, we note that the relevant events of that case occurred before the enactment of section 41.411 and its codification of a property owner's right to protest formally the failure of a taxing authority to deliver any notice "to which the property owner is entitled." TEX. TAX CODE ANN. § 41.411(a).

As noted above, the requirements of due process and due course of law are satisfied if a taxpayer is given an opportunity to be heard before an assessment board at some stage of the proceedings. *CIT Leasing Corp.*, 115 S.W.3d at 266; *Lal*, 701 S.W.2d at 47. The Code provides for procedural due process for property owners to file and to pursue a protest of a taxing authority's actions, in circumstances such as those presented in this case, in sections 41.41

and 41.411, subject to section 41.44's requirements that such protest be in writing and be filed timely. *See CIT Leasing Corp.*, 115 S.W.3d at 266. We acknowledge that, in the case of a lack of adequate or timely notice, a taxing authority's allegedly objectionable actions may be difficult to discover, "especially when the burden of complaining of notice falls on the party who is entitled to receive notice, rather than on the party who has the statutory duty to send notice." *Gen. Elec. Corp.*, 819 S.W.2d at 919. However, in the present case, having received notice directly from the taxing authorities of the cancellation of the tax exemptions and of the "unofficial" appraised value of the facility well before the tax delinquency date of February 1, 1997,[24] ABT and CIT were aware of the fact that they had not received, as they alleged, notices to which they were entitled. *See* TEX. TAX CODE ANN. § 41.411(a). We agree with the following observation by the court in *Dincans:*

> In view of the plethora of cases placing the burden on the property owner to pursue his administrative remedy in a timely manner, we cannot accept [a taxpayer's] argument that would permit a property owner to do nothing when confronted with an obviously erroneous tax bill. To interpret [the applicable sections of the Code] in such a manner would defeat the entire scheme the tax code sets out for protesting and appealing actions of the appraisal board.

*Id.*, 882 S.W.2d at 78.

Based on the circumstances presented, we hold that ABT's and CIT's failure to pursue and to exhaust the administrative remedies available to them under the Code to protest the taxing authorities' assess-

---

24. We note that, in their answers to requests for admission propounded by the taxing authorities, ABT and CIT admitted that they "were aware of the appraised value placed on the property made the basis of this suit, prior to February 1, 1997."

ment and collection of the 1996 property taxes on the facility was not excused by any alleged failure of the taxing authorities to provide or timely to deliver the notices of which ABT and CIT complain. Because this ground advanced by GCAD and the taxing authorities in their respective motions for summary judgment is meritorious, and because the trial court did not state the specific grounds for its ruling granting summary judgment on this issue, we need not address ABT's and CIT's arguments concerning GCAD's and the taxing authorities' other grounds for summary judgment.

Accordingly, we hold that the trial court did not err in rendering summary judgment in favor of GCAD and the taxing authorities on ABT's and CIT's claims concerning the assessment and collection of the 1996 ad valorem property taxes.

### 1997 Property Tax Claims

ABT and CIT further contend, in their first and second issues, that the trial court erred in rendering summary judgment on their claim against the taxing authorities for statutory interest on the refunded portion of the 1997 property taxes.[25] In their motion for summary judgment, the taxing authorities asserted that ABT and CIT were not entitled to statutory interest on the refunded portion of the 1997 property taxes because ABT and CIT received their refund within 60 days of the date that liability for the refund arose. *See* TEX. TAX CODE ANN. § 31.12 (Vernon 2001).

■ A taxpayer may apply to the tax collector of a taxing unit for a refund of an overpayment or erroneous payment of taxes and, if the auditor for the taxing unit determines that the payment was excessive or erroneous, "the tax collector shall refund the amount of the excessive or erroneous payment...." *Id.* § 31.11(a) (Vernon Supp.2004). However, if the amount of the refund exceeds $500, the tax collector may not make the refund unless the governing body of the taxing unit also determines that the payment was excessive or erroneous and approves the refund. *Id.* If a refund of a tax is "paid on or before the 60th day after the date the liability for the refund arises," no interest is due on the amount refunded. *Id.* § 31.12(a). However, if not paid by that date, the amount of the refund accrues interest at a rate of one percent for each month or part of a month that the refund is unpaid. *Id.*

As noted above, in March 1997, CIT paid the taxing authorities $627,933.40 as the estimated 1997 property taxes assessed on the facility. In response to ABT's and CIT's protest of the 1997 appraised value of the facility, GCAD subsequently changed its appraisal roll to reduce the appraised value of the facility to $14,375,000. In September 1997, all of the taxing authorities adopted their respective 1997 tax rates and, on October 21, 1997, with the exception of the County, the taxing authorities issued a refund to CIT for the amount of its overpayment of the 1997 property taxes on the facility. In December 1997, the Galveston County Commissioners Court approved and issued its refund to CIT for the overpayment of the 1997 property taxes on the facility.[26]

---

25. As conceded by ABT and CIT, they did not assert this claim against GCAD in their pleadings.

26. In support of their motion for summary judgment, the taxing authorities presented an affidavit from Reinarz, along with documen-

tation from the respective taxing authorities themselves, indicating the dates on which they had adopted their respective 1997 property tax rates. ABT and CIT objected to some of the exhibits attached to Reinarz's affidavit as "inadmissible hearsay," but ABT and CIT did not obtain a ruling from the trial court on

ABT and CIT argue that, because the appraised value of the facility was reduced on GCAD's appraisal roll in July 1997, liability for the refunds arose that month. Because the taxing authorities did not issue refunds of the overpayment of the 1997 property taxes within 60 days of that date, ABT and CIT assert that they are entitled to interest on the amount of the refunds at a rate of one percent per month until they were subsequently paid. In support of their argument, ABT and CIT rely on section 31.12(b)(3) of the Code, which provides that liability for a refund arises "on the date the change in the tax roll is certified to the assessor for the taxing unit." *Id.* § 31.12(b)(3) (Vernon 2001).

However, section 31.12(b)(4) of the Code provides that, if a property tax refund is required by section 31.11, and if the amount of the refund exceeds $500, liability for the refund arises on the date that the governing body of the taxing unit approves the refund. *Id.* § 31.12(b)(4) (Vernon 2001). Accordingly, we hold that the liability for the tax refunds owed on the 1997 property taxes arose in September and December 1997, when the refunds were approved by the taxing authorities. Because the taxing authorities subsequently issued refunds to ABT and CIT "on or before the 60th day after" the date that liability arose, no interest accrued. There-fore, we hold that the trial court did not err in rendering summary judgment on ABT's and CIT's claims for statutory interest on the refunded amount of the 1997 property taxes.

## Conclusion

We overrule ABT's and CIT's first and second issues, and we affirm the judgment of the trial court.

these objections. An objection to the admissibility of evidence is a challenge to the form of the evidence and is waived on appeal in the absence of a ruling by the trial court. *See* Tex.R. Civ. P. 166a(f); Tex R.App. P. 33.1; *St. Paul Ins. Co. v. Mefford,* 994 S.W.2d 715, 721 (Tex.App.-Dallas 1999, pet. denied). Moreover, on appeal, ABT and CIT do not challenge the admissibility of Reinarz's testimony, based on information that she attested was "personally known" to her, which recounts the information contained in the exhibits attached to her affidavit. Under these circumstances, we cannot consider the trial court's rendition of summary judgment in favor of the taxing authorities to have constituted an "implied" ruling denying ABT's and CIT's objections to the form of the taxing authorities' summary judgment evidence. *See Allen ex rel. B.A. v. Albin,* 97 S.W.3d 655, 663 (Tex.App.-Waco 2002, no pet.); *Rogers v. Continental Airlines, Inc.,* 41 S.W.3d 196, 200 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet.). Thus, ABT's and CIT's objections to such evidence are waived. Tex.R.App. P. 33.1.