Opinion issued June 16, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01139-CV

———————————

Bullseye PS III LP, as the Property Owners and the Property Owners, Appellant

V.

Harris
County Appraisal District, Appellee



 



 

On Appeal from the 333rd District Court

Harris County, Texas



Trial Court Case No. 2008-55531

 



 

O P I N I O N

          In
this property tax valuation case, appellant, Bullseye PS III LP (“Bullseye”),
challenges the trial court’s grant of a plea to the jurisdiction in favor of
the Harris County Appraisal District (“HCAD”) on Bullseye’s claim that HCAD
excessively and unequally appraised its property.[1]  In three issues on appeal, Bullseye contends
that the trial court erred in (1) granting HCAD’s plea to the jurisdiction
because Bullseye’s agent did not enter into a valuation agreement with HCAD’s
chief appraiser at the protest hearing; (2) denying Bullseye’s motion for
continuance; and (3) denying rehearing of Bullseye’s motion to compel
depositions.

          We
affirm the trial court’s judgment dismissing this case for lack of subject
matter jurisdiction.

Background

          Bullseye
owns a 1.36 acre tract of property located in Harris County, Texas, and it
maintains a storage unit facility on that property.  For the 2008 tax year, HCAD initially
appraised the property as having a market value of $6,283,781.  Bullseye filed a protest of the initial
valuation with the Harris County Appraisal Review Board (“the Board”) and
appointed O’Connor & Associates, a tax consulting firm, as its agent for
the administrative protest process.

          A
three-member panel of the Board held a hearing on Bullseye’s protest.  At the hearing, Darren Blakemore, an O’Connor
employee, represented Bullseye, and Mike Garcia appeared as the representative
for HCAD.  Before the hearing began,
Blakemore completed a “Hearing Affidavit” stating that his opinion for the
value of the property was $6,283,781—the same amount at which HCAD had initially appraised the property.  On the same form, Garcia, as the appraisal
district representative, swore that the testimony that he would present to the
Board was “true and correct.”  The
parties then offered the following sworn testimony at the hearing:

[Garcia]:               Account Number ending in
three.  My name is Mike Garcia, I am
under oath.  (Inaudible.)

 

[Blakemore]:        Sorry. 
My name is Darren Blakemore.  My
opinion of the value for the property is $6,283,781.

 

Board
Member:    Okay.  Ready for you to sign.  And, once again, the three of us have also
signed the affidavit.  We have both the
disclosure statement signed, the affidavit signed.  The opinion of value from the agent is
$6,283,781.  And we’re ready now for a
description of the property.

 

[Garcia]:               [Account Number.]  Property location is 4250 Southwest Freeway,
Suite 600, a/k/a Bullseye Storage.  This
is a 4396 mini warehouse built in 2000. 
Net rentable area of 61,452 square feet. 
Acreage of 1.3641 acres.  It’s the
opinion of the district that the property is valued at $6,283,781.

 

Board
Member:    Okay.  Comment, Mr. Blakemore?  Do you want to say anything more?

 

[Blakemore]:        No, sir.

 

Board Member:    Okay.

 

[Blakemore]:        No, sir.

 

Board
Member:    All right.  And any questions here?  I guess you will make a recommendation, or
did you already do that?  You guys agreed
on it, so really it’s out of our jurisdiction anyway.

 

[Garcia]:               Oh, you’ve agreed to this
value?  Oh, I’m sorry, I didn’t catch
that.

 

Board Member:    Yeah, he agreed to the noticed value.

 

[Garcia]:               Sorry about that.

 

Board Member:    Okay? 
And you do too, right?

 

[Garcia]:               I agree with it also.

 

Board
Member:    All right.  We’re going to close testimony.  Both the agent and the appraiser have agreed
on the noticed value of $6,283,781.  And
that will be the final figure for tax year 2008.  That will conclude the hearing.

 

After the hearing, the Board mailed Bullseye an order
determining protest, confirming the final 2008 appraised value at
$6,283,781.  The order included the
following notice:

YOU HAVE THE RIGHT TO APPEAL
THIS ORDER TO THE DISTRICT COURT.  IF YOU
WANT TO APPEAL, YOU SHOULD CONSULT AN ATTORNEY IMMEDIATELY.  YOU MUST FILE A PETITION WITH THE DISTRICT
COURT WITHIN 45 DAYS OF THE DATE YOU RECEIVE THIS NOTICE.

 

          Within
forty-five days after receiving the order, Bullseye brought a suit for judicial
review of the Board’s decision in the district court, contending that HCAD and
the Board had excessively and unequally appraised the property.  HCAD filed a plea to the jurisdiction arguing
that, because Bullseye’s agent and HCAD’s representative had reached an
agreement regarding the value of the property at the hearing, this agreement
rendered the valuation amount final and precluded Bullseye’s suit for judicial
review under Tax Code section 1.111(e).  HCAD
contended that, although Tax Code section 41.45(c) provides that the chief
appraiser is to appear at each protest hearing before the Board, the chief
appraiser may delegate this authority to appraisal district employees pursuant
to Tax Code section 6.05(c).  Because
HCAD’s representative and Bullseye’s agent agreed that the property should be
valued at $6,283,781, and this agreement was reached before the Board
determined Bullseye’s protest, the valuation became final, and, therefore,
according to HCAD, Bullseye could not challenge the valuation in a suit for
judicial review.

          In
response, Bullseye contended that HCAD did not meet the requirements for
establishing an agreement pursuant to section 1.111(e) because that section
requires an agreement between the property owner or the owner’s agent and the chief appraiser, and an agreement
between the owner’s agent and a representative
of the appraisal district does not suffice. 
Because HCAD only presented evidence of an agreement between the owner’s
agent and the appraisal district, which is distinct from the chief appraiser,
Bullseye argued that the trial court should deny HCAD’s plea to the
jurisdiction.  In its response, Bullseye
also moved for a continuance, alleging that HCAD’s discovery responses were
“contradictory and indicated that until recently [HCAD’s] position was that no
agreement existed.”  Bullseye requested a
continuance to conduct discovery “on [HCAD’s] contradictory position regarding
the purported agreement” with Bullseye’s agent. 
Bullseye also requested a rehearing of its motion to compel depositions
of HCAD employees “[i]n light of the contradictory discovery responses and [HCAD’s]
position that the court lacks jurisdiction based upon an assertion of factual
circumstances.”

          The
trial court granted HCAD’s plea to the jurisdiction and dismissed Bullseye’s
claim.  This appeal followed.

Standard of Review

          We
review a trial court’s ruling on a plea to the jurisdiction de novo.  Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226, 228 (Tex.
2004).  We construe the pleadings
liberally in favor of the plaintiff while considering the pleader’s
intent.  See id.  A trial court
decides a plea to the jurisdiction by reviewing the pleadings and any evidence
relevant to the jurisdictional inquiry.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 555 (Tex. 2000).  If the
jurisdictional defect cannot be cured by amending the pleadings, the trial
court may grant a meritorious plea to the jurisdiction without allowing the
plaintiff an opportunity to amend.  See Cnty. of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002).  When reviewing a
plea to the jurisdiction, we cannot examine the merits of the case.  See
Houston Indep. Sch. Dist. v. 1615 Corp., 217 S.W.3d 631, 635 (Tex. App.—Houston
[14th Dist.] 2006, pet. denied).

Agreement on Valuation

          In
its first issue, Bullseye contends that the trial court erred in granting
HCAD’s plea to the jurisdiction because (1) for an agreement to preclude a suit
for judicial review under Tax Code section 1.111(e), the agreement must be made
between the property owner’s agent and the chief appraiser, not merely a
representative of the appraisal district; (2) Bullseye has an “absolute right” seek
judicial review of the Board’s order; (3) applying section 1.111(e) under these
factual circumstances violates Bullseye’s due process rights; and (4) a
disputed factual issue exists regarding whether Bullseye’s agent made a
valuation agreement with the chief appraiser.

          Chapter
41 of the Tax Code provides that property owners are entitled to protest the
determination of the appraised value of the property and the unequal appraisal
of the property before the county’s appraisal review board.  Tex.
Tax Code Ann. § 41.41(a)(1)–(2) (Vernon 2008); Nevada Gold & Silver, Inc. v. Andrews Indep. Sch. Dist., 225
S.W.3d 68, 75 (Tex. App.—El Paso 2005, no pet.).  If the property owner meets certain
procedural requirements, the owner is entitled to a hearing on its protest
before the appraisal review board.  Tex. Tax Code Ann. § 41.44(a)
(Vernon 2008); Appraisal Review Bd. of
Harris Cnty. Appraisal Dist. v. Spencer Square Ltd., 252 S.W.3d 842, 845
(Tex. App.—Houston [14th Dist.] 2008, no pet.). 
At the hearing, the appraisal district has the burden of establishing
the value of the property by a preponderance of the evidence, and, if it does
not, the board must determine the protest in favor of the owner.  Tex.
Tax Code Ann. § 41.43(a) (Vernon 2008).  The purpose of the hearing is to give both
the appraisal district and the property owner an opportunity to appear before the
board and to present evidence and arguments regarding the parties’ relative
opinions on the property’s value.  See id.; see also id. § 41.45(b) (Vernon Supp. 2010) (“The property
owner initiating the protest is entitled to an opportunity to appear to offer
evidence or argument.”); id.
§ 41.66(b) (Vernon 2008) (“Each party to a hearing is entitled to offer
evidence . . . .”); id.
§ 41.67 (Vernon 2008) (discussing types of evidence that may be presented
at hearing).

          Generally,
property owners have a statutory right to file a suit for judicial review of an
appraisal review board’s order determining the property owner’s protest.  Tex.
Tax Code Ann. § 42.01(a)(1)(A) (Vernon 2008) (“A property owner is
entitled to appeal an order of the appraisal review board determining a protest
by the property owner . . . .”).  Tax Code section 1.111(e), however, provides
that:

(e)      An agreement between a property owner or
the owner’s agent and the chief appraiser is final if the agreement relates to
a matter:

 

(1)     which may be protested to the appraisal
review board or on which a protest has been filed but not determined by the
board[.]

 

Id.
§ 1.111(e)(1) (Vernon Supp. 2010). 
Section 1.111(e) agreements are “final and not subject to protest by the
property owner or subject to a property owner’s statutory suit for judicial
review under chapter 42.”  MHCB (USA) Leasing & Fin. Corp. v.
Galveston Cent. Appraisal Dist., 249 S.W.3d 68, 84 (Tex. App.—Houston [1st
Dist.] 2007, pet. denied).  These
agreements are final even without approval or adoption by the appraisal review
board.  Id. at 83; see also Tex. Tax Code Ann. § 41.01(b)
(Vernon 2008) (“The [appraisal review] board may not review or reject an
agreement between a property owner or the owner’s agent and the chief appraiser
under section 1.111(e).”); Sondock v.
Harris Cnty. Appraisal Dist., 231 S.W.3d 65, 69 (Tex. App.—Houston [14th
Dist.] 2007, no pet.) (“Because the agreement related to [a matter in which a
protest had been filed but not determined by the Board], at the moment it was
reached, it became final.”).

          The
Tax Code does not specifically define “agreement,” and thus we apply the
ordinary meaning of the term.  Tex. Gov’t Code Ann. § 312.002(a)
(Vernon 2005); Sondock, 231 S.W.3d at
69.  In Sondock, the Fourteenth Court of Appeals defined “agreement” as
“the act of agreeing; harmony of opinion; accord.”  Sondock,
231 S.W.3d at 69.  The court held that
section 1.111(e) does not require the parties to act on the agreement or
announce the agreement to the court.  Id. 
Because the parties expressed the same approximate value for the
property at the hearing, this “meeting of the minds” qualified as an agreement
under section 1.111(e).  Id. 
This Court agrees.  See Hartman v. Harris Cnty. Appraisal Dist.,
251 S.W.3d 595, 600 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (“When
the Hartmans’ agent and the appraiser each announced the same opinion as to the
value of the property, they were in ‘the act or fact of agreeing’ and were
expressing a ‘harmony of opinion.’  And
in announcing their opinions regarding the value, they were ‘acting’ upon the matter
and informing the panel of their agreement.”). 
A section 1.111(e) agreement may include the property owner’s acceptance
of a settlement offer made by the appraisal district; however, a formal
settlement agreement is not required under the statute.  See
Tex. Tax. Code Ann. § 41.415(e)
(Vernon Supp. 2010) (“If the property owner accepts a settlement offer made by
the appraisal district, the chief appraiser shall enter the settlement in the
appraisal records as an agreement made under section 1.111(e).”).  In Hartman,
we concluded that section 1.111(e) “does not require a formal announcement such
as ‘we agree’” or any other “magic words.” 
Hartman, 251 S.W.3d at 600,
601.  Instead, “[i]t is the fact of
agreeing—the harmony of opinions—that creates the agreement.”  Id.
at 601.

          Both
this Court and the Fourteenth Court of Appeals have recently addressed whether
an agreement between the property owner’s agent and a representative of the
appraisal district constitutes an agreement with the chief appraiser that
qualifies as a section 1.111(e) agreement. 
See Kelly v. Harris Cnty.
Appraisal Dist., No. 01-09-00996-CV, 2011 WL 497032 (Tex. App.—Houston [1st
Dist.] Feb. 10, 2011, no pet. h.) (mem. op.); Crescent Oaks LP v. Harris Cnty. Appraisal Dist., No.
14-10-00199-CV, 2011 WL 166932 (Tex. App.—Houston [14th Dist.] Jan. 13, 2011, no
pet.) (mem. op.) (per curiam); KM TS
Spring Cypress L.L.C. v. Harris Cnty. Appraisal Dist., No. 14-09-00978-CV,
2010 WL 3921126 (Tex. App.—Houston [14th Dist.] Oct. 7, 2010, pet. denied)
(mem. op.) (per curiam).  In Kelly, we noted that although Tax Code
section 41.45(c) directs that the chief appraiser “shall appear at each protest
hearing before the appraisal review board to represent the appraisal office,”
section 6.05(e) provides that “[t]he chief appraiser may delegate authority to
his employees.”  Kelly, 2011 WL 497032, at *4; Tex.
Tax Code Ann. §§ 41.45(c) (Vernon Supp. 2010), 6.05(e) (Vernon 2008);
see also Crescent Oaks, 2011 WL
166932, at *2 (“The chief appraiser is not prohibited from delegating his
authority to reach an agreement with a property owner.”).  We also observed that, given the size of
Harris County and the number of valuation protests, “it is not uncommon for an
HCAD representative to appear at protest hearings on behalf of the chief appraiser.”  Kelly,
2011 WL 497032, at *4 (citing Sondock,
231 S.W.3d at 69; Loposer v. Harris Cnty.
Appraisal Dist., No. 14-07-00956-CV, 2009 WL 2146151, at *1 (Tex.
App.—Houston [14th Dist.] July 21, 2009, no pet.) (mem. op.); Prince v. Harris Cnty. Appraisal Dist.,
No. 14-07-00919-CV, 2009 WL 20975, at *1 (Tex. App.—Houston [14th Dist.] Jan.
6, 2009, no pet.) (mem. op.); and Mann v.
Harris Cnty. Appraisal Dist., No. 01-07-00436-CV, 2008 WL 1747807, at *1
(Tex. App.—Houston [1st Dist.] Apr. 17, 2008, no pet.) (mem. op.)).

In Kelly, the Board held a protest hearing, an HCAD representative
appeared at the hearing on the chief appraiser’s behalf, Kelly did not object
to the chief appraiser’s failure to appear, and Kelly’s agent reached an
agreement at the hearing with the HCAD representative regarding the value of
the property.  Kelly, 2011 WL 497032, at *4. 
We held that, notwithstanding the chief appraiser’s failure to appear,
because the chief appraiser could delegate his authority to appear at hearings
the agreement reached between Kelly’s agent and HCAD’s representative was final,
and Kelly could not seek judicial review of the Board’s subsequent order
confirming the agreed valuation amount.  Id.; see
also Crescent Oaks, 2011 WL 166932, at *2 (stating, “We therefore reject
Crescent Oaks’s claim that an agreement between a property owner and an HCAD
representative appearing on behalf of the chief appraiser is not an agreement
subject to section 1.111(e).”); Spring
Cypress, 2010 WL 3921126, at *1 (holding same).

This case is factually analogous to
Kelly, Crescent Oaks, and Spring
Cypress.  The Board held a protest
hearing, at which Bullseye’s agent and an HCAD representative appeared.  At the beginning of the hearing, HCAD’s
representative swore that he was present to represent HCAD and that the
testimony he would present to the Board was true and correct.  The chief appraiser did not appear, but
Bullseye made no objection on this basis. 
During the hearing, Bullseye’s agent and HCAD’s representative offered
identical opinions regarding the value of the property—which was the same amount as HCAD’s initial
valuation—and a Board member noted the
agreement on the record.  Neither
representative offered any further testimony regarding the value of the
property, and a Board member stated that the parties had agreed on the noticed
value and that $6,283,781 would be the final value for the 2008 tax year.  The Board then issued an order confirming
this amount as the final value.  Under
section 1.111(e) of the Tax Code, this agreement was final and
non-appealable.  See Tex. Tax Code Ann.
§ 1.111(e); id. § 41.01(b);
MHCB, 249 S.W.3d at 83–84.  Nevertheless, Bullseye sought judicial review
in the district court.

The parties agree, as they must,
that the chief appraiser may delegate to appraisal district employees his
authority to attend a protest hearing and present evidence and a valuation
opinion to the Board.[2]  Bullseye argues, however, that the record
must affirmatively demonstrate that the chief appraiser delegated to the
representative of the appraisal district in each case the specific authority to
enter into an agreement with the property owner before a court may determine
that a section 1.111(e) agreement has been reached.  We hold that the statute does not require
this specific delegation.  Although the
Tax Code contemplates that the owner and the appraisal district may reach a
formal settlement agreement regarding the property’s value, both this court and
our sister court, the Fourteenth Court of Appeals, have repeatedly held that
such formalities are not required under section 1.111(e).  See,
e.g., Hartman, 251 S.W.3d at 600;
Sondock, 231 S.W.3d at 69.  All that is required for an agreement is that
the parties express the same opinion regarding value—they need not have discussed the matter or come
to a consensus prior to the hearing, nor must they state on the record at the
hearing that they agree on the value.  If
the property owner happens to state the same valuation opinion as the appraisal
district representative, who undisputedly has the power to state a valuation
opinion on behalf of the chief appraiser, an agreement is reached.  No specific authority from the chief
appraiser to enter into an agreement with the property owner is necessary.  We therefore hold that because the chief
appraiser may delegate authority to appraisal district employees to appear at
protest hearings and present a valuation opinion, by stating the same opinion
regarding the value of the property, Bullseye’s agent and HCAD’s representative
reached an agreement pursuant to section 1.111(e), precluding Bullseye from
seeking judicial review of the subsequent Board order.  See
Kelly, 2011 WL 497032, at *4; Crescent
Oaks, 2011 WL 166932, at *2; Spring
Cypress, 2010 WL 3921126, at *1.

Bullseye also contends, in its
first issue, that it had an “absolute right to appeal” the Board’s order
determining the protest pursuant to Tax Code sections 42.01 and 42.21.  See
Tex. Tax Code Ann.
§§ 42.01(a) (Vernon 2008), 42.21(a) (Vernon Supp. 2010).  This is an incorrect statement of the law.  As we noted in MHCB, “appraisal agreements between property owners and chief
appraisers are final and cannot be reviewed or rejected by appraisal review
boards.”  MHCB, 249 S.W.3d at 83; see
also Sondock, 231 S.W.3d at 69 (noting that Legislature amended section
1.111(e) and deleted requirement that Board approve of agreement before it
becomes final).  Because the Board cannot
review a section 1.111(e) agreement, “it necessarily cannot render an order
resolving a protest based on a review of that agreement.”  MHCB,
249 S.W.3d at 83 (citing Tex. Tax Code
Ann. § 41.01(b)).  Thus,
because the Board cannot render an order resolving the protest after the
parties reach a valuation agreement, “the property owner cannot file a suit for
judicial review under Tax Code Chapter 42 . . . of matters
relating to an appraisal agreement.”  Id. (citing BPAC Tex., LP v. Harris Cnty. Appraisal Dist., No. 01-03-01238-CV,
2004 WL 2422033, at *3 (Tex. App.—Houston [1st Dist.] Oct. 28, 2004, no pet.)
(mem. op.)).  At the moment the parties
reach an agreement, the agreement becomes final and any subsequent valuation
determinations by the appraisal review board are irrelevant.  MHCB,
249 S.W.3d at 88; Sondock, 231 S.W.3d
at 69.

At the time that Bullseye’s agent
and HCAD’s representative agreed at the hearing on the value of the property,
the Board had not yet determined Bullseye’s protest.  See
Tex. Tax Code Ann. § 1.111(e)
(stating agreement is final if it relates to matter on which protest has been
filed but not yet determined by review board). 
Because the agreement became final at the time the agent and the
representative stated the same value for the property, “the subsequent approval
and order by the [B]oard was irrelevant,” and Bullseye did not have a Board
order of which it could seek judicial review in the district court.  See Kelly,
2011 WL 497032, at *4; see also Mann,
2008 WL 1747807, at *6 (“[W]e conclude that the protest was not ‘determined by
the Board,’ even though, after the parties reached an agreement, the Board
entered an ‘Order Determining Protest’ that set the appraised value at the
amount agreed to by the parties.”).

Bullseye also contends that precluding
its suit for judicial review in the district court violates its due process
rights.  This Court and the Fourteenth
Court have repeatedly addressed this assertion and found due process satisfied
under these circumstances.

The collection of taxes constitutes
deprivation of property, and, therefore, a taxing authority must afford a
property owner due process of law.  McKesson Corp. v. Div. of Alcoholic
Beverages & Tobacco, Dep’t of Bus. Regulation of Fla., 496 U.S. 18,
36–37, 110 S. Ct. 2238, 2250–51 (1990); Sondock,
231 S.W.3d at 70.  “[D]ue process simply
affords a right to be heard before final assessment; it does not detail the
review mechanism.”  ABT Galveston Ltd. P’ship v. Galveston Cent. Appraisal Dist., 137
S.W.3d 146, 155 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (quoting Dallas Cnty. Appraisal Dist. v. Lal, 701
S.W.2d 44, 47 (Tex. App.—Dallas 1985, writ ref’d n.r.e.)).  In taxation cases, due process is satisfied
if the taxpayer is given an opportunity to be heard before an assessment board
at some stage of the proceedings.  Id. (citing Denton Cent. Appraisal Dist. v. CIT Leasing Corp., 115 S.W.3d 261,
266 (Tex. App.—Fort Worth 2003, pet. denied)).

Here, Bullseye protested the
initial appraised value of its property and received an opportunity to present
its opinion regarding the value to the Board. 
At the hearing, both Bullseye’s agent and HCAD’s representative opined
that the value of the property was $6,283,781—the same amount as the initial appraised value.  After the HCAD representative stated his
belief regarding value and after a Board member noted that the parties appeared
to agree on value, Bullseye’s agent did not object or make any further
comments.  The Board later issued an
order confirming the 2008 value at $6,283,781, in accordance with the parties’
agreement.  We therefore conclude that
because Bullseye had an opportunity to protest the initial value to the Board
and it reached an agreement with HCAD during the hearing, Bullseye’s due process
rights were not violated.  See Kelly, 2011 WL 497032, at *5; see also Sondock, 231 S.W.3d at 70 (“We
cannot imagine how the Sondocks were deprived of due process when they were
given the opportunity to present their arguments to a legal panel and they
reached an agreement fully satisfying their stated contentions.”).

Finally, Bullseye contends in its
first issue that the trial court incorrectly granted HCAD’s plea to the
jurisdiction because a disputed factual issue existed regarding whether
Bullseye’s agent and the chief appraiser agreed on the value of the property.

The record is clear that, at the
protest hearing, Bullseye’s agent and HCAD’s representative both stated that
they believed that the property should be valued at $6,283,781.  As we have held, this is considered an agreement
under section 1.111(e).  See Hartman, 251 S.W.3d at 600; see also Sondock, 231 S.W.3d at 69.  It is undisputed that the chief appraiser did
not appear at the protest hearing but that an appraisal district representative
appeared and expressed the same valuation opinion as Bullseye’s agent.  The question before us on appeal is whether
an agreement between an owner’s agent and an appraisal district representative—as opposed to the chief appraiser—qualifies as a section 1.111(e) agreement that
precludes a suit for judicial review.  As
the Fourteenth Court of Appeals has held, this is a question of law that is
proper for a plea to the jurisdiction.  See Crescent Oaks, 2011 WL 166932, at *2;
Spring Cypress, 2010 WL 3921126, at
*2.  We conclude that this issue may
permissibly be determined via a plea to the jurisdiction.

We overrule Bullseye’s first issue.

Because this issue is dispositive
of this appeal, we do not reach Bullseye’s second issue, arguing that the trial
court, in granting HCAD’s plea to the jurisdiction, erred in implicitly denying
its motion for continuance, or its third issue, arguing that, in granting the
plea to the jurisdiction, the trial court erroneously denied a rehearing of
Bullseye’s motion to compel the depositions of appraisal district employees.




 

Conclusion

          We
affirm the judgment of the trial court dismissing this case for lack of subject
matter jurisdiction.  All pending motions
are dismissed as moot.

 

 

                                                                    Evelyn V.
Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Massengale, concurring.

 











[1]
          Although Bullseye’s original
petition listed both the Harris County Appraisal District and the Harris County
Appraisal Review Board as defendants, the record does not indicate that the
Board received service of citation or appeared in the proceeding.  An appraisal review board is not a necessary
party to a petition for judicial review of the board’s order.  Tex.
Tax Code Ann. § 42.21(b) (Vernon Supp. 2010).  Because the Board is not a necessary party to
the appeal and the record does not affirmatively demonstrate that the Board was
served or that it appeared, we hold that HCAD is the only appellee properly
before the court.  See KM-Timbercreek, LLC v. Harris Cnty. Appraisal Dist., 312 S.W.3d
722, 724 n.1 (Tex. App.—Houston [1st Dist.] 2009, no pet.).





[2]
          At the hearing on HCAD’s plea to
the jurisdiction, Bullseye’s counsel acknowledged that Jim Robertson, HCAD’s
chief appraiser, had completed an affidavit in which he averred that he
delegates authority to HCAD employees and appraisers to make final agreements
with property owners pursuant to the Tax Code. 
Bullseye’s counsel stated that her problems with the affidavit were that
it did not address the specific hearing in this case, nor did it discuss when
and how authority is delegated.  The
trial court stated that delegation of authority is a “verbal act of independent
legal significance” and it discounted the relevance of when and how the chief
appraiser delegated his authority and of whether he globally delegated
authority or delegated on a case by case basis. 
The chief appraiser’s affidavit was, therefore, not entered into
evidence at the hearing and is not part of the appellate record.