# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00151-CV

MAG-T, L.P., d/b/a Maund Toyota; Uplink Corp.; Shoal Creek Dental Group, L.L.P.;
and GH Contracting, Inc., Appellants

v.

Travis Central Appraisal District, Travis County Appraisal Review Board, and Nelda
Wells Spears, in her capacity as Travis County Tax Assessor-Collector, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. GN400278, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## O P I N I O N

Appellants (the Taxpayers) sued the appellees, the Travis Central Appraisal District,

the Travis County Appraisal Review Board, and the Tax Assessor-Collector (the Taxing

Authorities),[1] alleging the Taxing Authorities had improperly increased the Taxpayers' property

taxes after the appraisal role had been certified. The Taxpayers asserted that they were excused from

exhausting the administrative remedies provided in the tax code by at least one of five exceptions

established in Texas jurisprudence. The district court found that the Taxpayers had not exhausted

---

[1]  Because their interests are often aligned, we refer to appellees Travis Central Appraisal
District, Travis County Appraisal Review Board, and the Tax Assessor-Collector collectively as the
"Taxing Authorities."  When their interests diverge, we refer to the appellees individually.

their administrative remedies and dismissed the suit for lack of jurisdiction. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

The Taxpayers are various owners of commercial property located in Travis County. In May 2003, the Travis Central Appraisal District (the Appraisal District) sent Notices of Appraised Property Value to the Taxpayers for the 2003 tax year. The notices advised the Taxpayers of the appraised value the Appraisal District placed on each commercial property and the associated property tax due. The Taxpayers did not protest the appraisal values published in the May notices. On July 24, 2003, the Travis County Appraisal Review Board (ARB) approved and the Chief Appraiser certified the appraisal roll. In November 2003, the Tax Assessor-Collector issued tax statements and initiated the collection process pursuant to her statutory authority.

The tax code codifies the constitutional obligation of our state government to appraise and assess property for taxation purposes.[2] *See Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 257 (Tex. 1999). It creates appraisal districts and requires each district to appraise property for the ad valorem taxing units within the district. *Id*. The tax code also establishes an appraisal review board for every appraisal district, which is governed by its board of directors and appoints the chief appraiser. *See* Tex. Tax Code Ann. §§ 6.031-.035, 6.05(c), 41.04 (West 2001),

---

[2] The Texas Constitution requires all real property, unless exempt, be taxed in proportion to its value, which shall be ascertained as may be provided by law. *See* Tex. Const. art. VIII, § 1(b). The same section requires that taxation be "equal and uniform." *See id.* § 1(a). The constitution further requires all property not rendered for taxation by its owner "shall be assessed at its fair value by the proper officer." *See id.* § 11. Article VIII, section 18, requires that a "single appraisal" within each county of property subject to ad valorem taxation is to be provided by general law. *See id.* § 18.

2

§§ 6.03, 6.41 (West Supp. 2004-05). The chief appraiser prepares the appraisal records, which list all taxable property in the district and associated appraised values. *See* Tex. Tax Code Ann. § 25.01 (West 2001). Generally, taxable property is appraised at its market value as of January 1. Following notice to the property owner of appraised value, if required, the chief appraiser submits the completed appraisal records to the ARB for review and determination of protests. *See id*. § 25.22. The appraisal roll may not be changed once approved by the ARB, except as provided by section 25.25 (correction of errors), sections 41.01-41.71 (hearing of protests and challenges by ARB) and sections 42.01-42.43 (judicial review). *See id.* § 25.25(a).

The tax code sets forth the administrative procedures for aggrieved property owners to protest their tax liabilities. *See generally* Tex. Tax Code Ann. §§ 41.01-.42, 42.01-.22, 42.225-.25, 42.28, 42.29, 42.42 (West 2001), 41.43, 42.221, 42.26, 42.41 (West Supp. 2004-05). The tax code allows a property owner to protest, among other action, the appraised value of the owner's property, the inclusion of the property on the appraisal records, and any other action of the chief appraiser, appraisal district, or ARB that applies to and adversely affects the property owner. Tex. Tax Code Ann. §§ 41.41(a)(1), (3), (9) (West 2001). After the property owner receives notice of a change, the property owner has 30 days to file a protest. *Id*. § 41.44(a)(2). A property owner who files a protest after this deadline, but before the appraisal board approves the appraisal records, may still obtain a hearing and a determination of the protest upon a showing of good cause for its failure to file a timely protest. *See id*. § 41.44(b). The tax code contains provisions for review board hearing procedures including provisions for the issuance of subpoenas and taking of evidence. *See id.* §§ 41.61-.71.

A property owner is also entitled to protest the failure of the Taxing Authorities to give the proper notice to which a property owner is entitled. *See id*. § 41.411(a). If the failure to deliver such notice is established, the ARB must then determine the property owner's protest on its merits. *Id.* § 41.411(b). The Code provides that a property owner who files a notice of protest regarding the appraisal district's failure to provide or to deliver any notice to which the property owner is entitled has a right to a hearing and a determination of the property owner's protest if the owner (1) pays the amount of the taxes due on the portion of the taxable value of the property that is not in dispute before the delinquency date, and (2) files its notice of protest before the date the taxes on the property to which the notice applies becomes delinquent. *See id.* §§ 41.411, 41.44(c), 42.08(b).

The legislature amended section 22.23(c) of the tax code to encourage property owners to submit tangible personal property for taxation that had been previously omitted from the appraisal rolls. *See* Tex. Tax Code Ann. § 22.23(c) (West Supp. 2004-05). Normally, the chief appraiser has the authority to assess back-taxes for personal property that had been omitted from the appraisal roll in either of the two preceding years. *See id*. § 25.21. However, under the section 22.23(c) amendment, if taxpayers rendered their property by the December 1, 2003 deadline, they were granted "amnesty," which means that their previously omitted property would be exempt from retroactive taxation for the 2001 and 2002 tax years. *See id.* § 22.23(c).

The Taxpayers took advantage of the section 22.23(c) amnesty provision and timely filed amnesty renditions by the December 1, 2003 deadline *after* the Taxpayers' property had already been assessed for taxes. Thus, the appraisal value upon which their original 2003 tax bill was based

4

did not include the value of the personal property disclosed in the amnesty renditions filed later in 2003. Accordingly, the Appraisal District prepared supplemental appraisal records that were approved by the ARB, and issued new appraisal notices for the 2003 tax year that included increased property appraisals encompassing the previously omitted property.

The new Notices of Appraisal, dated January 6, 2004 (January 6 Notices), were received by the Taxpayers on or about January 14. The new notices were in every respect the same as the original notices received earlier in the 2003 tax year, save an upward adjustment in the appraised property value and an increased tax bill reflecting the addition of the omitted property that has been disclosed in the amnesty renditions.

The January 6 notices informed the Taxpayers that they could protest the amended appraisal before the ARB within thirty days of the notice under the administrative remedies provided in chapters 41 and 42 of the tax code. *See* Tex. Tax Code Ann. §§ 41.01-.42, 42.01-.22, 42.225-.25, 42.28, 42.29, 42.42 (West 2001), 41.43, 42.221,42.26, 42.41 (West Supp. 2004-05). The Taxpayers declined to do so. Instead, they filed suit in district court on January 30, seeking a temporary restraining order, a temporary injunction, a permanent injunction, and a declaration that the Taxpayers' due process rights had been violated, that the Taxing Authorities violated Texas law and acted without authority, and that the actions the Taxing Authorities took were null and void.

The district court initially granted to the Taxpayers a temporary restraining order enjoining the Taxing Authorities from appraising, assessing, or attempting to collect the disputed additional property taxes. On February 4, the date of the temporary injunction hearing, the Tax

5

Assessor-Collector generated new tax bills that made the property taxes due on February 29. The district judge denied the Taxpayers' motion for temporary injunction on February 19 and entered the order dismissing the Taxpayers' petition for declaratory judgment on February 27.

In its findings of fact and conclusions of law, the district court found that on or before the December 1, 2003 deadline, the Taxpayers filed amnesty renditions with the Appraisal District pursuant to section 22.23(c) and the Taxing Authorities delivered notices of appraised value that were received by the Taxpayers on January 14, 2004. The district court also found that the Taxpayers did not file a protest of the notices in question and did not exhaust the administrative remedies provided by the tax code for complaining of the Taxing Authorities' actions. The judge dismissed the case for lack of jurisdiction, reasoning that the Taxpayers failed to exhaust the administrative remedies contained in Chapters 41 and 42 of the tax code for protest and appeal of the complained of actions. This appeal followed.

**Plea to the Jurisdiction**

The Taxpayers appeal the district court's decision in one issue, whether the district court erred when it granted the Taxing Authorities' plea to the jurisdiction, and argue that at least one of five exceptions applies to excuse the Taxpayers from having to exhaust their administrative remedies before seeking judicial review.

We begin our analysis with the assumption that a district court may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity, unless a contrary showing is made. Tex. Const. art. V,

6

§ 8;[3] Tex. Gov't Code Ann. §§ 24.007-08 (West 2004); *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). A plea to the jurisdiction challenges the district court's authority to determine a cause of action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). To invoke a court's authority, a plaintiff must allege facts that affirmatively demonstrate that the court has jurisdiction to hear the cause. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Texas Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect apparent from the face of the pleadings making it impossible for the plaintiff's petition to confer jurisdiction on the district court. *Bybee v. Fireman's Fund Ins. Co.*, 331 S.W.2d 910, 914 (Tex. 1960); *City of San Angelo v. Smith*, 69 S.W.3d 303, 305 (Tex. App.—Austin 2002, pet. denied). Courts must consider evidence when necessary to decide jurisdictional issues. *Miranda*, 133 S.W.3d at 221; *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *Blue*, 34 S.W.3d at 554-55. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, a district court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

We review the denial of a plea to the jurisdiction *de novo*. *Id.*; *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (citing *Mayhew v. Town of*

---

[3] A district court has "exclusive, appellate and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate and original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." *See* Tex. Const. art. V, § 8.

*Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). For purposes of this review, we liberally construe the pleadings in favor of jurisdiction, looking to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226.

The intent of the administrative review process is to resolve the majority of tax protests at the administrative level and to relieve the burden on the court system. *Webb County Appraisal Dist. v. New Laredo Hotel*, 792 S.W.2d 952, 954 (Tex. 1990). The corollary to this rule is that judicial review of administrative orders is not available unless all administrative remedies have been pursued to the fullest extent. *See id*. If an agency has exclusive jurisdiction to determine a matter, a litigant's failure to exhaust all administrative remedies before seeking judicial review of the administrative body's actions deprives the court of subject matter jurisdiction over claims within the body's exclusive jurisdiction, and the court must dismiss such claims without prejudice. Tex. Gov't Code Ann. § 2001.171 (West 2000); *Subaru*, 84 S.W.3d at 221; *Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 777 (Tex. App.—Austin 2004, pet. filed).

The Taxing Authorities have exclusive jurisdiction over tax disputes and the Taxpayers must exhaust their administrative remedies before seeking judicial review. *E.g.*, *General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1992) (taxpayer is required to exhaust administrative procedures before challenging tax assessment); *New Laredo Hotel*, 792 S.W.2d at 954 (taxpayer who failed to appear at administrative protest hearing deemed to have failed to exhaust his administrative remedies, thus depriving district court of its jurisdiction the hear the case); *A.B.T. Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146, 152 (Tex. App.—Houston [1st Dist.] 2004, no pet h.) (taxpayer who did not timely file protest

8

deemed to have failed to diligently pursue or exhaust its administrative remedies under the tax code, thus depriving district court of jurisdiction to hear claim); *Dallas County Appraisal Dist. v. Lal*, 701 S.W.2d 44, 46 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (taxpayer's suit challenging excessive property tax valuation dismissed for lack of jurisdiction because taxpayer failed to exhaust administrative remedies). Therefore, the grant of a plea to the jurisdiction is only improper if the Taxpayers' case falls into one of the exceptions to the exhaustion of administrative remedies doctrine.

An aggrieved party is excused from exhausting its administrative remedies if certain exceptions apply: (1) an administrative agency purports to act outside its statutory powers; (2) the issue presented is purely a question of law; (3) certain constitutional issues are involved; (4) the administrative remedies are inadequate and the exhaustion of administrative remedies would cause irreparable injury; and (5) failure to provide the Taxpayers notice of appraised property value deprives the Taxing Authorities of jurisdiction and voids the appraisal. *Gibson v. Waco Indep. Sch. Dist.*, 971 S.W.2d 199, 201-02 (Tex. App.—Waco 1998) (enumerating the exceptions), *vacated on other grounds*, 22 S.W.3d 849 (Tex. 2000); *see also Lexington Ins. Co.*, 128 S.W.3d at 780; *Appraisal Review Bd. of El Paso County Cent. Appraisal Dist. v. Fisher*, 88 S.W.3d 807 (Tex. App.—El Paso 2002, pet. denied); *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 839-40 (Tex. App.—Austin 2001, pet. denied).

The Taxpayers assert that each exception applies to their case, excusing the Taxpayers from having to exhaust their administrative remedies before seeking judicial review.

*Exception: Acting Outside of Statutory Authority*

The Taxpayers assert the doctrine of exhaustion of administrative remedies does not apply to their dispute because the Taxpayers contend that the Taxing Authorities acted outside of their statutory authority.[4] We disagree.

If a state agency acts without authority and contrary to express statutes, the aggrieved party may appeal directly to the courts. *Lexington Ins.*, 128 S.W.3d at 780; *Mitchison v. Houston Indep. Sch. Dist.*, 803 S.W.2d 769, 773 (Tex. App.—Houston [14th Dist.] 1991, writ denied). In such a case, the purposes underlying the exhaustion rule are not applicable, judicial and administrative efficiency are not served, and agency policies and expertise are irrelevant if the agency's final action will be a nullity. *Lexington Ins.*, 128 S.W.3d at 780.

The Taxpayers first assert that an increase in the appraised value after the tax roll was certified was not authorized by section 22.23(c), and, thus the Taxing Authorities acted without statutory authority when they increased the appraisal value of the Taxpayers' property to account for the personal property disclosed in the amnesty renditions. Second, the Taxpayers assert that even if the Taxing Authorities had the power to augment the appraisal roll to reflect the value of the omitted property, the Taxing Authorities improperly increased the appraisal roll after it had been certified, violating section 25.25.

When interpreting a statutory provision, a court must ascertain and effectuate the legislative intent. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). If the statutory

---

[4] The Taxpayers asserted that the Taxing Authorities acted without authority when they sent out the January 6, 2004, notices. The Taxpayers claim that the notices contained several procedural defects and violated sections 25.23(c), 25.19, 25.21(b) and 25.23(d) of the tax code. The Taxpayers also assert they were denied a right to a hearing on the matter. We address both of these subissues in our discussion related to the constitutional violations exception of the exhaustion of remedies doctrine.

text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results. *Id*. We consider a statute as a whole and do not consider its provisions in isolation. *Continental Cas. Ins. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex. 2001); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001).

Several tax code provisions are critical to our interpretation. Section 25.25 prohibits the Taxing Authorities from changing the appraisal roll after it is certified unless the Taxpayers filed a Chapter 41 protest or a corresponding Chapter 42 lawsuit, or a motion was filed under Section 25.25 for certain specific situations which seem inapplicable to the present case. *See* Tex. Tax Code Ann. § 25.25. However, Section 25.21 permits the chief appraiser to include omitted property in the appraisal records at any time:

> (a) If the chief appraiser discovers that real property was omitted from an appraisal roll in any one of the five preceding years or that *personal property was omitted from an appraisal roll in one of the two preceding years, he shall appraise the property as of January 1 of each year that it was omitted and enter the property and its appraised value in the appraisal records*.
>
> (b) The entry shall show that the appraisal is for property that was omitted from an appraisal roll in a prior year and shall indicate the year and the appraised value for each year.

Tex. Tax Code Ann. § 25.21 (West 2001) (Emphasis added.). Section 25.23 specifically authorizes additions to the appraisal roll for "supplemental appraisal records," such as previously omitted property.[5] *See id*. § 25.23(a)(1).

---

[5] After submission of appraisal records, the chief appraiser shall prepare supplemental appraisal records listing each taxable property the chief appraiser discovers that is not included in the records already submitted, including property that was omitted from an appraisal roll in a prior tax year.

11

Section 22.23(c) encouraged the Taxpayers to declare omitted personal property by providing an amnesty incentive:

> If before December 1, 2003, a person files a rendition statement for the 2003 tax year that provides the information required by Section 22.01 . . . , and as a result of that information, the chief appraiser discovers that some or all of that person's tangible personal property used for the production of income was omitted from the appraisal roll in one of the two preceding years, *the chief appraiser may not add the value of the omitted property to the 2001 or 2002 appraisal rolls . . . .*

*See id.* § 22.23(c)(Emphasis added.)

Section 12(c) of Senate Bill 340, which amended section 22.23(c), states:

> Subsection (c), Section 22.23, tax code, as added by this Act, *takes effect September 1, 2003, and applies to the rendition of property for ad valorem tax purposes for the 2003 tax year*.

Act of June 20, 2003, 78th Leg., R.S., ch. 1173, § 12(c), 2003 Tex. Gen. Laws 3353, 3358 (Emphasis added).

We start our analysis by considering the change section 22.23(c) made to the tax code in light of the property tax scheme. The chief appraiser has the authority to include personal property that was omitted from an appraisal roll in any of the two preceding years and to create a supplemental appraisal record for previously omitted property. *See* Tex. Tax Code Ann. §§ 25.21, 25.23(a)(1) (West 2001). Thus, absent section 22.23(c), the Taxing Authorities would have the statutory authority to assess back property tax on the omitted property for tax years 2001 and 2002, and for the current tax year, 2003. *See id.* Section 22.23(c) abrogates the Taxing Authorities' powers to assess back taxes for omitted property for tax years 2001 and 2002. *See* Tex. Tax Code

12

Ann. § 22.23(c) (West Supp. 2004-05). We find no language in section 22.23(c) that repeals the Taxing Authorities' power under sections 25.21 and 25.23 to include previously omitted personal property in the appraisal roll for the current tax year, 2003. We conclude therefore that the Taxing Authorities acted with statutory authority when they assessed the Taxpayers additional tax reflecting omitted property.

In their second argument, the Taxpayers complain that even if the Taxing Authorities had the authority to augment the appraisal roll, they impermissibly increased their property appraisal values after the appraisal roll had been certified. This question turns on the proper characterization of the increase in appraisal value of which the Taxpayers complain. The Taxpayers assert that the Taxing Authorities increased the appraisal value of the Taxpayers' property after July, 25, 2003, when the appraisal roll had been approved and certified, in violation of section 25.25 of the tax code. *See* Tex. Tax Code Ann. § 25.25 (West 2001). The Taxpayers argue that since the Taxpayers neither filed a Chapter 41 protest nor filed a Chapter 42 lawsuit and no other applicable situation under 25.25 arises, the Taxing Authorities' actions to increase the appraisal roll in January 2004 violated section 25.25.

Section 25.25 does not apply to the instant case. Although the Taxing Authorities are not permitted under section 25.25 to *increase the value* at which property had been appraised after the appraisal roll has been certified, the Taxing Authorities have the authority to *add omitted property*, as discussed above, to the appraisal roll through a supplemental appraisal record even after the roll has been certified. *See id*. §§ 25.21, 25.23.

13

The Taxpayers cite two cases to support their claim that a dispute about whether personal property exists at a given location is a dispute about value, rather than a dispute about omitted property. *See Titanium Metals v. Dallas Cent. Appraisal Dist.*, 35 S.W.3d 63, 66 (Tex. App.—Dallas 1999, no pet.); *Dallas Cent. Appraisal Dist. v. GTE Directories Corp.*, 905 S.W.2d 318, 322-23 (Tex. App.—Dallas 1995, writ denied). In *Titanium Metals* and *GTE Directories*, the property owners argued that section 25.25(c) of the tax code entitled them to a downward adjustment in their appraisal value for property no longer present on the premises. *Titanium Metals*, 3 S.W.3d at 65; *GTE*, 905 S.W.2d 322-23. The issue in this case, however, is the addition of omitted property to the appraisal roll under sections 25.21 and 25.23, rather than a dispute over valuation under section 25.25. Thus, *Titanium Metals* and *GTE* do not impact our analysis. The Taxing Authorities were authorized under the tax code to include omitted property in the appraisal roll.[6]

The Taxpayers contend in their third argument that even if they owed additional taxes for tax year 2003, the delinquency date Taxing Authorities placed on the taxes owed was too early and violated section 31.01(a-1) of the tax code. Taxes are generally due on receipt of the tax bill and

---

[6] The Taxpayers also argued that the Taxing Authorities did not present evidence that established that the addition of omitted property, rather than an impermissible increase in appraisal value, triggered the appraisal roll augmentation. We disagree. The evidence in the record shows that the Taxpayers disclosed omitted personal property to the Taxing Authorities in late 2003 and that the Taxing Authorities acted on the Taxpayers' amnesty renditions and added the omitted property to the appraisal roll. The Taxpayers admitted to filing amnesty renditions in late 2003 pursuant to section 22.23(c) under the provisions put in place to encourage property owners to disclose personal property omitted from the appraisal rolls. In the record, the amended appraisal roll included, as a reason for the increase, the code "Amnesty CPPR 22.23(C)."

are delinquent if not paid before February 1 of the following tax year. Tex. Tax Code Ann. § 31.02(a) (West Supp. 2004-05). Section 31.04(a-1) of the tax code provides specific guidelines for when tax bills become delinquent if the bill includes property that was erroneously omitted. *See id*. § 31.04(a-1). If a tax bill is mailed that includes taxes for one or more preceding tax years because the property was erroneously omitted from the tax roll in those tax years, the delinquency date provided by section 31.02 is postponed to February 1 of the first year that will provide a period of at least 180 days after the date the tax bill is mailed in which to pay the taxes before they become delinquent. *Id.*

Section 41.41(a)(9) entitles property owners to a right to protest any action of the taxing authorities that applies to and adversely affects the property owners. Tex. Tax Code Ann. § 41.41(a)(9) (West 2001). Under section 31.04(a-1), the Taxpayers could argue that their 2003 tax bill should be due on February 1, 2005. However, the Taxpayers' argument that the statutory violation exception of the exhaustion of administrative remedies doctrine applies to their case fails because the Taxpayers could have filed a protest under section 41.41(a)(9), thus exhausting their administrative remedies before seeking judicial review. The Taxpayers simply did not avail themselves of the remedy provided in the tax code.

We find that the Taxing Authorities acted under the authority of sections 22.23(c), 25.21, and 25.23 when they augmented the appraisal roll to reflect omitted property the Taxpayers rendered pursuant to section 22.23(c). Thus, the three Taxing Authority actions the Taxpayers complain of do not trigger the "action outside of statutory authority" exception to the exhaustion doctrine.

15

*Exceptions:  Constitutional Claims and Jurisdiction*

The Taxpayers claim that the Taxing Authorities took actions that amounted to a deprivation of property and a violation of the Taxpayers' due process rights and thus they are excused from exhausting their administrative remedies.  *Fisher*, 88 S.W.3d at 813; *Gibson*, 971 S.W.2d at 201-02.  The Taxpayers' also challenge whether the Taxing Authorities acquired jurisdiction over the Taxpayers if the Taxing Authorities did not furnish the required notice. *Fisher*, 88 S.W.3d at 812; *Harris County Appraisal Dist. v. General Elec. Corp.*, 819 S.W.2d 915, 920 (Tex. App.—Houston [14th Dist.] 1991, no writ); *Garza v. Block Distrib. Co.*, 696 S.W.2d 259, 262 (Tex. App.—San Antonio 1985, no writ).

Collection of a tax constitutes a deprivation of property; accordingly, a taxing unit must afford a property owner due process of law and must provide meaningful backward-looking relief to rectify any unconstitutional deprivation.  *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Florida*, 496 U.S. 18, 31 (1990); *Fisher*, 88 S.W.3d at 813.  At a minimum, due process in this context requires notice and a fair opportunity to be heard before a deprivation of a protected property interest. *McKesson*, 496 U.S. at 37.  However, due process only affords a right to be heard before final assessment; it does not detail the review mechanism.  *A.B.T. Galveston Ltd.*, 137 S.W.3d at 155; *Lal*, 701 S.W.2d at 47.  In tax cases, Texas courts have held that due process is satisfied if the taxpayer is given an opportunity to be heard before an assessment board at some stage of the proceedings.  *A.B.T. Galveston Ltd.*, 137 S.W.3d at 155; *Denton Cent. Appraisal Dist. v. C.I.T. Leasing Corp.*, 115 S.W.3d 261, 266 (Tex. App.—Fort Worth 2003, pet. denied).

The Taxing Authorities are required to provide property owners notice in the form of a letter. Tex. Tax Code Ann. § 25.19(a), (b), (g), (h), (j) (West Supp. 2004-05). The letter must cite appraised property value, segregate real and personal property appraisals, and provide a detailed explanation of the time and procedure for protesting the appraisal value. *Id.* Supplemental appraisal records are the proper way to add omitted property to the appraisal roll, subject to review, protest and appeal under chapters 41 and 42 of the tax code. Tex. Tax Code Ann. § 25.23(a)(1), (d) (West 2001). Section 25.23 provides that the chief appraiser shall deliver notice as required under 25.19, as soon as practicable after determining the appraisal value of supplemental appraisal records. *Id.* § 25.23(c). If a correction of the tax roll increases the tax liability of a property owner after the tax bill is mailed, the assessor shall prepare and mail a corrected tax bill that conforms with chapter 31 notice guidelines. *Id.* § 26.15(d).

The tax code allows a property owner to protest, among other items, the appraised value of the owner's property, the inclusion of the property on the appraisal records, and any other action of the chief appraiser, appraisal district, or ARB that applies to and adversely affects the property owner. *Id.* §§ 41.41(a)(1), (3), (9). After the property owner receives notice of an objectionable change, the property owner has 30 days to file such a protest. *Id.* § 41.41(a)(2).

A property owner may also protest the failure of the Taxing Authorities to give the proper notice to which a property owner is entitled. *See id.* § 41.411(a). Under this section, after the property owner files a notice of protest with the ARB, the ARB holds an evidentiary hearing to determine whether the property owner was sent or received the required notice and determines the property owner's protest on its merits. *Id.* §§ 41.411(b), (c); *C.I.T. Leasing*, 115 S.W.3d at 266. A

17

property owner who files a notice of protest regarding the appraisal district's failure to provide or to deliver "any notice to which the property owner is entitled" has a right to a hearing if the owner (1) pays the amount of the taxes due on the undisputed portion of the taxes owed before the delinquency date and (2) files its notice of protest before "the date the taxes on the property to which the notice applies becomes delinquent." *Id.* §§ 41.411, 41.44(c), 42.08(b). If the owner is unsuccessful in his protest to the appraisal review board, the owner may appeal the board's order to the district court. *Id*. § 42.01(1)(A). The district court will then review the board's order *de novo*. *C.I.T. Leasing*, 115 S.W.3d at 266; *City of Fort Worth v. Pastusek Indus.*, 48 S.W.3d 366, 370 (Tex. App.—Fort Worth 2001, no pet.).

The tax code expressly provides that a taxpayer's failure to receive notice does not affect the validity of the appraisal or "the imposition of any tax on the basis of the appraisal." Tex. Tax Code Ann. §§ § 25.19(a)(3), (d) (West Supp. 2004-05); *C.I.T. Leasing*, 115 S.W.3d at 265; *Lal*, 701 S.W.2d at 48. Under subsection (e), notice may be dispensed with "if the amount of increase in appraised value is $1,000 or less." Tex. Tax Code Ann. § 25.19(e) (West Supp. 2004-05). In addition, section 41.411 expressly grants the appraisal review board jurisdiction to hear taxpayer complaints regarding lack of notice. Tex. Tax Code Ann. § 41.411 (West 2001). Each of these provisions is evidence that the legislature did not intend that the notice required under section 25.19 be a prerequisite to a taxing district's jurisdiction. Therefore, we hold that the failure to provide notice of appraised value is not jurisdictional and does not render an appraisal void.

The Taxpayers further contend that the Taxing Authorities did not provide the Taxpayers with proper notice or a meaningful opportunity to dispute the Taxing Authorities' action,

18

which resulted in a deprivation of due process. The Taxpayers complain that the January 6 notice they received did not comply with the notice provisions set forth under sections 25.19 and 25.23(c) and that the supplemental tax bill did not contain a brief explanation of the reason for the correction as required by section 26.15 (d).[7] The Taxpayers also allege that the January 6 notice erroneously indicated that the Taxpayers had already participated in a protest hearing on the matter when in fact they had not, which resulted in a deprivation of property without an opportunity to be heard.

Firmly rooted in Texas jurisprudence is a constitutional claim exception to the exhaustion of administrative remedies doctrine. *E.g.*, *Fisher*, 88 S.W.3d at 813; *Gibson*, 971 S.W.2d at 201-02. The constitutional claim exception to the exhaustion of administrative remedies doctrine was created to protect property owners from the loss of property without an opportunity to be heard at the administrative level and without recourse to judicial review. *C.I.T. Leasing*, 115 S.W.3d at

---

[7] The Taxpayers also complain that the notices they received did not comply with section 26.15(e) of the tax code, which provides:

> If a correction that increases the tax liability of a property owner is made *after the tax is paid*, the assessor shall prepare and mail a supplemental tax bill in the manner provided by Chapter 31 of this code for tax bills generally. He shall include with the supplemental bill a brief explanation of the reason for and effect of the supplemental bill. The additional tax is due on receipt of the supplemental bill and becomes delinquent if not paid before the delinquency date prescribed by Chapter 31 of this code or before the first day of the next month after the date of the mailing that will provide at least 21 days for payment of the tax, whichever is later.

Tex. Tax Code Ann. § 26.15(e) (West 2001) (emphasis added).

We do not address this claim, because there is no evidence in the record that the Taxpayers have paid their 2003 taxes and that the Tax Assessor-Collector has issued a supplemental tax bill. The record reflects the situation more aptly described in section 26.15(d) that the Taxpayers have received amended tax bills after the original tax bills had been mailed.

266. Before the enactment of section 41.411, the property tax scheme did not provide taxpayers with adequate remedies at law to cure defective notice. *Id.* Thus, courts developed equitable remedies in order to provide taxpayers with due process protections. *Id.* The addition of section 41.411, however, provided taxpayers with the due process protections that had previously been lacking under the previous statutory scheme. *Id.*

The purpose of section 41.411 is to determine whether a property owner failed to receive notice of a tax assessment, thereby depriving it of the right to be heard at the administrative level. *See C.I.T. Leasing Corp.*, 115 S.W.3d at 266; *General Elec. Corp.*, 819 S.W.2d at 919. Assuming without deciding that the Taxing Authorities sent the Taxpayers defective notice, the tax code provided the Taxpayers with administrative procedures specifically created to allow them to protest defective notice of such actions and to protest improper actions the Taxing Authorities took adverse to the Taxpayers' interests. *See* Tex. Tax Code Ann. §§ 41.41(a)(1), (3), (9), 41.411(a) (West 2001). The Taxpayers were provided with statutory protections under which they could protest objectionable Taxing Authority actions but chose not to avail themselves of their administrative remedies. Therefore, since the Taxpayers were presented with an opportunity to be heard, deprivations of property that stem from the addition of the omitted property are not unconstitutional.

The Taxpayers rely heavily on *Fisher*, *General Electric* and *Garza* to support their position. *See Fisher,* 88 S.W.3d at 813 (holding the Taxing Authorities violated taxpayer's due process rights because taxpayer neither received notice nor had an opportunity to contest the appraisal); *General Elec. Corp.*, 819 S.W.2d at 920 (holding that not scheduling a protest hearing

was unconstitutional, after property owners had paid their taxes "under protest" and timely filed for a protest hearing); *Garza v. Block Distrib. Co.*, 696 S.W.2d 259, 262 (Tex. App.—San Antonio 1985, no writ) (holding that an appraisal board did not acquire jurisdiction to consider an increase in the appraised value of the subject property when statute, before the enactment of section 41.411, did not require notice and an opportunity to be heard).

In *Fisher*, the El Paso Court of Appeals found that Fisher's due process rights had been violated because he was not afforded *any* opportunity to be heard as to the increased appraisal of his property before the appraisal district approved the tax roll. *See Fisher*, 88 S.W.3d at 813. In the present case, the Taxpayers were not denied the opportunity to protest the Taxing Authorities' actions. Rather, the Taxpayers simply did not avail themselves of the administrative remedies created for their benefit under the protest provisions of the tax code. *See* Tex. Tax Code Ann. §§ 41.41(a)(1), (3), (9), 41.411(a) (West 2001).

In *General Electric*, the property owners properly followed the administrative protest procedures, paid the taxes owed "under protest," and filed a timely protest. *General Elec. Corp.*, 819 S.W.2d at 918. The appraisal review board did not schedule a protest hearing after property owners complied with the statutory prerequisites and therefore did not provide General Electric with notice of its hearing. *Id*. at 919. The court observed that General Electric was denied due process because it was denied its protest hearing and was left with no other way to obtain a protest determination from the appraisal review board to present for judicial review. *Id*. at 920. The court held that the taxing authorities never obtained jurisdiction over General Electric, and the increased appraisal was a void act. *Id*. In contrast to *General Electric*, the Taxpayers here have not availed themselves of

21

the administrative protest procedure. The Taxpayers were provided with due process but chose not to embrace their opportunities to protest the actions of which they complain. *Garza* is inapplicable because it was decided before section 41.411 codified a property owner's right to formally protest the failure of a taxing authority to deliver any notice "to which the property owner is entitled." *A.B.T. Galveston*, 137 S.W.3d at 157.

The Taxpayers propose an interpretation of the tax code that denies the Taxing Authorities the power to address and remedy, through established administrative procedures, the subsequent increased appraisal of January 2004. In view of the cases placing the burden on the property owner to pursue his administrative remedy in a timely manner, we cannot accept the Taxpayers' argument that would permit a property owner to do nothing when confronted with an obviously erroneous tax bill. *See A.B.T. Galveston*, 137 S.W.3d at 157; *Harris County Appraisal Dist. v. Dincans*, 882 S.W.2d 75, 78 (Tex. App.—Houston [14th Dist.] 1994, writ denied)*.* To interpret the tax code in this manner would defeat the entire tax scheme the code sets out for protesting and appealing actions of the taxing authorities. The simple allegation of constitutional misdeeds does not suffice to avoid the administrative process. *See Jones v. Clarkville Indep. Sch. Dist.*, 46 S.W.3d 467, 474 (Tex. App.—Texarkana 2001, no pet.).

We conclude that the Taxpayers received the process they were due when they were afforded an opportunity to protest defective notice and to be heard on the merits of their tax dispute during the administrative process. The constitutional claims or jurisdiction exceptions do not excuse the Taxpayers from exhausting their administrative remedies before seeking judicial review.

*Exceptions:  Irreparable Injury and Inadequate Remedies*

The Taxpayers assert that they are exempt from exhausting their administrative remedies because the remedies offered by the tax code are inadequate and will cause irreparable injury.  The Taxpayers specifically complain that they are required to pay their taxes before the deadline for filing a protest and that statutory penalties, interest, liens, seizures, and attorney's fees accrue before the administrative process can commence.  Taxpayers further broadly claim that the inadequacies of the Appraisal District's and ARB's actions resulted in irreparable injury.  Finally, Taxpayers claim they are entitled to injunctive relief to remedy constitutional violations.

Texas courts have recognized an exception to the exhaustion of administrative remedies doctrine if the administrative remedies are inadequate or an aggrieved party will suffer irreparable harm.[8]  *See Houston Fed'n of Teachers v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987); *Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 366 (Tex. App.—San Antonio 2004, no pet.); *Jones v. Dallas Ind. Sch. Dist.*, 872 S.W.2d 294, 296 (Tex. App.—Dallas 1994, writ denied).  "Irreparable harm" means that an award of damages at a later date will not adequately compensate an aggrieved party.  *See Houston Fed'n of Teachers*, 730 S.W.2d at 646; *Gutierrez*, 139 S.W.3d at 367.

In *Houston Fed'n of Teachers*, the supreme court reviewed the decision of the court of appeals that dissolved a temporary injunction barring a school district from lengthening the school day and dismissed the underlying suit.  *Houston Fed'n of Teachers*, 730 S.W.2d at 645.  The district

---

[8]  Texas courts seemed to have applied this doctrine once, in *Houston Fed'n of Teachers*. Although the *Gutierrez* and *Jones* discussed the irreparable injury and inadequate remedies exception to the exhaustion doctrine, they declined to apply it.

23

court recognized that the Commissioner of Education was not authorized to order immediate injunctive relief and that if the teachers had started the administrative process, the teachers would have suffered irreparable harm by the time injunctive relief could be obtained from the courts. *Id*. The court of appeals held that the teachers should have first pursued their claim through the administrative process before resorting to the courts, and did not address the district court's finding of severe, immediate and irreparable harm that formed the basis of the temporary injunction. *Id*. The supreme court stated that parties should not be required to pursue the administrative process if the parties would suffer irreparable harm and if the agency is unable to provide relief. *Id*. Under these circumstances, the courts may properly exercise their jurisdiction in order to provide an adequate remedy. *Id*. Because the court of appeals did not disturb the district court's finding, the supreme court held that the court of appeals erred in dismissing the suit and remanded the cause to the court of appeals to determine whether the district court had abused its discretion in granting the temporary injunction. *Id*.

In this matter, the Taxpayers' assertions about the nature of the statutory scheme here are incorrect. A taxpayer who protests lack of notice under section 41.411 is required to comply with section 42.08 payment requirements or forfeit his or her right to a final determination. Tex. Tax Code Ann. § 41.411(c) (West 2001). During the pendency of an appeal, a property owner must only pay the lesser of the amount of taxes the owner agrees is correct or the amount of the assessment. *Id*. § 42.08(b). The delinquency date for any additional amount of taxes due on the property is determined by guidelines set forth under section 42.42(c). *Id*. § 42.08(a). If the property owner does not prevail in the protest, section 42.42(c) directs the tax assessor to prepare and mail a supplemental

tax bill, and the property owner will be liable for penalties and interest calculated under section 33.01.  *Id.* § 42.42(c).  The Tax Assessor-Collector is required to refund any amount of taxes that have been overpaid.  *Id*. § 42.43(a).  Penalties and interest due on the unpaid portion of the taxes owed are calculated pursuant to section 33.01.  *Id.* § 33.01.

Thus, the statutory scheme does not force the Taxpayers to pay *all* of the taxes the Taxing Authorities assessed but, rather, requires only that the Taxpayers pay the portion of the assessed taxes with which they have no disagreement.  Tex. Tax Code Ann. §§ 41.411(c); 42.08(a).  The Taxpayers admit that the actions taken and taxes assessed by the Taxing Authorities prior to the January 6 notice were proper.  Thus, paying the taxes the Taxpayers agree are due would not cause the Taxpayers harm.

The tax code contemplates that the all taxes, disputed and undisputed alike, are due by the set delinquency date.  *Id*. § 42.08(a); § 42.42(c).  The disputed amount is subject to penalties and interest only if the Taxpayers lose their protest.  *Id*.  If the Taxpayers are concerned that interest and penalties would accrue on the unpaid, disputed portions of the taxes owed, the Taxpayers could pay the disputed portions by the delinquency date, and if they prevail in their protest, the Taxpayers would be entitled to a refund.  *See id*. § 42.43(a).  The statutory scheme does not permit the Taxing Authorities to assert a tax lien, seize the Taxpayers' property, or assess penalties, interest, or attorneys' fees before the administrative process commences, as the Taxpayers assert.

In sum, nothing about this scheme causes the sort of "irreparable harm" that might have been envisioned in *Houston Fed'n of Teachers*, nor is there any evidence in the record that indicates the actions of the Taxing Authorities have otherwise caused irreparable harm to the

25

Taxpayers.  Last, since there was no constitutional violation, as discussed above, Taxpayers are not entitled to injunctive relief on this separate ground.

We find that the irreparable injury or inadequate remedy exception does not apply to excuse the Taxpayers from exhausting their administrative remedies.

*Exception:  Pure Questions of Law*

The Taxpayers claim that three of their contentions are pure questions of law and excuse the Taxpayers from exhausting their administrative remedies.  The Taxpayers rely on *Grounds v. Tolar Indep. Sch. Dist.* for the proposition of law that an exception to the exhaustion doctrine exists when the dispute involves a pure question of law.  *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986).[9]  In *Grounds*, a teacher/head football coach was informed by the Tolar Independent School District that his contract would not be renewed.  *Id*. at 890.  Grounds

_____

[9] The supreme court in *Grounds* relies in part on *Mingus v. Wadley* for the proposition that when a cause of action is derived from a statute, the statutory prerequisites are mandatory and exclusive, and that they must be satisfied or the action cannot be maintained for lack of jurisdiction. *Grounds*, 707 S.W.2d at 891-92 (citing *Mingus v. Wadley*, 285 S.W. 1084, 1087 (Tex. 1926)).  In 2000, the supreme court overruled *Mingus* to the extent that it characterized the plaintiff's failure to establish statutory prerequisites as a *jurisdictional* matter.  *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000).  The *Dubai* Court found that a district court had the jurisdiction to hear a wrongful death action, not because the plaintiffs had satisfied their statutory prerequisites, but rather because the matter was within the court's constitutional subject matter jurisdiction.  *Id*.  Thus, the question of whether a district court has jurisdiction to hear a case is a separate inquiry from whether a plaintiff has satisfied his statutory prerequisites, a question which addresses whether the plaintiff has a right to seek relief under a statute.  *Id*.

The overruling of *Mingus* does not disturb our analysis of *Grounds*.  Although the *Grounds* Court found that the district court lacked the jurisdiction to hear the case because the plaintiff did not satisfy its statutory requirements, an improper conclusion in view of *Dubai*, the *Grounds* Court's reasoning with respect to the exhaustion doctrine and its exceptions is sound.  *See Grounds*, 707 S.W.2d at 892.

appealed the school district's decision, which resulted in the State Commissioner of Education ordering Grounds's re-employment in the "same professional capacity." *Id*. The school district neither filed a motion for rehearing nor appealed the State Commissioner of Education's decision in a Travis County district court, both actions required by the Administrative Procedure and Texas Register Act. *Id*. Instead, the school district attacked the administrative order in district court in Hood County. *Id*. The district court rendered judgment for the school district and the court of appeals affirmed. *Id*. The primary issue in *Grounds*, according to the supreme court, is whether an administrative order is subject to collateral attack in violation of the procedural prerequisites of the agency's enabling statute and the Administrative Procedure and Texas Register Act. *Id*. The supreme court found that the school district did not follow the mandatory and exclusive statutory prerequisites for review, and did not invoke the jurisdiction of the Hood County district court. *Id*. at 892.

The school district claimed, and the court of appeals held, that in matters involving the administration of school law, a party need not exhaust all administrative remedies when pure questions of law are involved. *Id*. Although the supreme court acknowledged the pure question of law exception to the exhaustion doctrine, it declined to apply it in *Grounds. Id*. The supreme court reasoned that because the relevant enabling statute provides for the interpretation of teacher contracts and for appellate procedures, it was clearly within the State Commissioner of Education's power to determine a teacher's statutory rights. *Id*. The interpretation of the rights of the parties to the teacher contract is not a pure question of law. *Id*. Thus, questions dedicated to an administrative agency as part of its exclusive jurisdiction in a statutory scheme to interpret are not subject to collateral attack

27

in district court without first exhausting the administrative remedies provided in the statutory scheme, even if the aggrieved party characterizes the question as a "pure questions of law." *See id.*

The Taxpayers assert the following three questions are pure questions of law and excuse them from exhausting their administrative remedies before seeking judicial review: whether the Taxing Authorities violated statutory law by increasing the tax roll after it had been approved to take into account the § 22.23(c) amnesty provision; whether the Taxing Authorities gave the Taxpayers proper notice and a meaningful opportunity to be heard when they amended the appraisal roll as required by the Constitution and the tax code; and whether the due date on the Taxpayers' increased tax bill violates the tax code.

Although these questions may well be mixed questions of law and fact, even if each question were a pure question of law, the Legislature has given the Taxing Authorities exclusive jurisdiction to interpret and act under the § 22.23(c) amnesty provision and to hear disputes about the appraised value of the owner's property, the inclusion of the property on the appraisal records, whether the Taxing Authorities provided the required notice and any other action of the chief appraiser, appraisal district, or ARB that applies to and adversely affects the property owner. Tex. Tax Code Ann. §§ 41.41(a)(1), (3), (9), 41.411(a) (West 2001), §22.23(c) (West Supp. 2004-05); *see*, *e.g.*, *General Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1992); *A.B.T. Galveston*, 137 S.W.3d at 157. Because the questions the Taxpayers raise have already been dedicated to the Taxing Authorities to decide, the Taxpayers cannot collaterally attack the final actions and decisions of the Taxing Authorities in district court on the grounds that they are excused

28

from exhausting their administrative remedies because the matters are "pure questions of law." *See*

*Grounds*, 707 S.W.2d at 892.  We overrule the Taxpayers' issue.

## CONCLUSION

The Taxpayers assert that each of five exceptions to the exhaustion of remedies doctrine apply to except the Taxpayers from pursuing their administrative remedies.  We conclude that none of the established exceptions to the exhaustion of administrative remedies doctrine applies to the Taxpayers' case.  The Taxpayers failed to exhaust all administrative remedies before seeking judicial review, and consequently, deprived the district court of subject matter jurisdiction over claims within the administrative body's exclusive jurisdiction.  The district court did not err when it granted the Taxing Authorities' plea to the jurisdiction, nor when it denied the Taxpayers' request for a temporary injunction.  We affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:  February 3, 2005

29