# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00174-CV

---

**Sarah Horton, Appellant**

**v.**

**City of Smithville, Texas, Appellee**

---

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
NO. 24,734, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Sarah Horton appeals from the trial court's order granting the City of Smithville's plea to the jurisdiction and motion for summary judgment. Horton brought suit against the City of Smithville ("the City") in connection with a private party's use of real property adjacent to her residence as a live-music venue, bringing claims of nuisance, civil conspiracy, unconstitutional taking, and violations of the Texas Open Meetings Act. Horton also brought claims against Todd and Elise Helmcamp, the operators of the live-music venue. The City filed a plea to the jurisdiction regarding the nuisance, civil conspiracy, and unconstitutional taking claims, and, in the alternative, a motion for summary judgment, which also addressed the claim of Texas Open Meetings Act violations. The trial court, after granting the City's plea to the jurisdiction and motion for summary judgment, severed the claims against the City from the claims pending against the Helmcamps, and

Horton appealed. Because Horton failed to exhaust her administrative remedies before bringing suit, we hold that the trial court did not err in granting the City's plea to the jurisdiction. We do not address the motion for summary judgment because the jurisdictional issue is dispositive of all claims raised on appeal.

## BACKGROUND

Horton owns real property in Smithville, Texas, which is adjacent to property owned by the Helmcamps. According to the City's zoning ordinance, the Horton property and the Helmcamp property are located in an area zoned as a C-2 district, or a "General Commercial District." Property in a C-2 district may be used for general and limited retail, office, warehouse and distribution, research and development, and other establishments that involve similar amounts of noise, odor, dust, vibration, blast, and traffic. A non-exhaustive list of businesses expressly allowed in C-2 districts includes restaurants, department stores, supermarkets, hotels, dance and music studios, convenience stores, and gas stations.

The City's zoning ordinance also create various set-back, parking, and noise barrier requirements for property located in C-2 districts. The ordinance includes a grandfather clause, which states that non-conforming structures existing at the time the structural requirements were created need not comply, unless the structure is enlarged, moved, or substantially destroyed. The City's zoning ordinance was initially enacted in 1979 and amended in 1998. Both the Horton home and the structure on the Helmcamp property were in existence at the time of the initial enactment in 1979.

In the fall of 2002, the Helmcamps began using their property as the "Waystation Opry," a live-music venue. Before launching the Waystation Opry, the Helmcamps sought the advice of Jack Page, the City's Public Works Director, regarding whether the property was zoned for use as a live-music venue. Page indicated that he believed that the property was zoned for such use. In response to Horton's complaints regarding the Waystation Opry, Page conferred with Tex Middlebrook, Smithville City Manager. After reviewing the zoning ordinance, both Middlebrook and Page came to the conclusion that the property's use as a live-music venue did not violate the ordinance. Page then informed Horton that her only recourse against the Waystation Opry would be to inform the police if the music became loud enough to violate the City's noise ordinance.

The parties do not dispute that the Waystation Opry fails to comport with the set-back, parking, and noise barrier requirements of the City's zoning ordinance. Page and Middlebrook, after reviewing the ordinance, took the position that the Helmcamps' property is exempt from these requirements because it is subject to the grandfather clause for nonconforming structures.

On October 15, 2002, Horton brought suit in federal court against the City and the Helmcamps, alleging violations of her equal protection and due process rights, as well as conspiracy, fraud, defamation, and intentional infliction of emotional distress. The federal district court granted the City's motion for summary judgment as to all federal claims and dismissed without prejudice all state-law claims. The Fifth Circuit affirmed.

In response to Horton's litigation and the accompanying legal fees, the Helmcamps voluntarily discontinued the Waystation Opry. Since that time, the Waystation Opry has not

3

operated on the Helmcamps' property.[1] During the time of its operation, the Waystation Opry hosted a total of six live-music events, which were held on one Saturday per month from the hours of 6:30 p.m. to 10:00 p.m.

While Horton's suit was pending in federal court, she filed suit against the City and the Helmcamps in state court, pleading causes of action for nuisance, civil conspiracy, unconstitutional taking, and violations of the Texas Open Meetings Act. The City filed a plea to the jurisdiction asserting governmental immunity and that Horton failed to exhaust her administrative remedies prior to filing suit. Alternatively, the City moved for both traditional and no-evidence summary judgment. The trial court issued an order granting the City's plea to the jurisdiction and motion for summary judgment.[2] The claims against the City were subsequently severed, and this appeal followed.

On appeal, Horton contends that the trial court had subject-matter jurisdiction over her claims because she was not required to exhaust administrative remedies and because the Texas Tort Claims Act provides a statutory waiver of the City's governmental immunity. She further contends that summary judgment was improper because she presented a fact issue regarding her claims of nuisance and unconstitutional taking. Horton does not appeal the trial court's judgment regarding her causes of action for civil conspiracy or violations of the Texas Open Meetings Act.

---

[1] While the Waystation Opry is no longer in operation, a live controversy remains because Horton sought monetary damages in relation to her unconstitutional takings claim. *See Pinnacle Gas Treating, Inc. v. Read*, 104 S.W.3d 544, 545 (Tex. 2003) (holding that when monetary damages are at issue, live issue remains in controversy).

[2] Because the plea to the jurisdiction did not address the claims made under the Texas Open Meetings Act, the trial court's grant of the plea to the jurisdiction did not dispose of all claims, requiring the trial court to rule on the motion for summary judgment as well.

4

**STANDARD OF REVIEW**

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The plaintiff has the burden of alleging facts to affirmatively demonstrate that the trial court has jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether this burden has been met and whether undisputed evidence of jurisdictional facts establishes or negates a trial court's jurisdiction are questions of law reviewed de novo. *Id.* In performing this review, an appellate court does not look to the merits of the case but considers only the pleadings and evidence relevant to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If the pleadings affirmatively negate the existence of jurisdiction, a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.*

**ANALYSIS**

**Objections to Appellant's Brief**

The City argues that because Horton's brief does not include citations to the appellate record and her appendix contains items that are not part of the appellate record, she has failed to comply with the Texas Rules of Appellate Procedure and therefore has waived all points of error on appeal.

It is a basic and well-established rule of appellate procedure that statements of fact in a party's brief must be supported by record references. *See* Tex. R. App. P. 38.1(f). An appellant is required to refer the appellate court to those portions of the record that support her argument, as the appellate court "is under no duty to make an independent search of the record for evidence

5

supporting an appellant's position." *Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 493 (Tex. App.—Austin 1994, no writ). Horton's statement of facts makes no reference to the appellate record.

However, the rules of appellate procedure also require that briefing rules be liberally construed. Tex. R. App. P. 38.9; *see Moore County v. Bergner*, 526 S.W.2d 702, 704 (Tex. Civ. App.—Amarillo 1975, no writ) ("If we can determine from the points of error, the statements, and the arguments the complaints presented by appellant's brief, then we will liberally construe the briefing rules to pass on the merits of the case."); *Brown v. Malinowski*, 347 S.W.2d 626, 627 (Tex. Civ. App.—Waco 1961, no writ) (noting that, where no record references were made in a statement of facts, "[w]e have applied extremely liberal construction to the briefing rules so as to consider the brief"). Because we are able to determine the complaints presented by Horton's brief, we will apply a liberal construction of the briefing rules so that we may address the merits of her case.

However, we cannot consider those portions of Horton's appendix that are not included in the appellate record. *See Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (appellate courts may not consider matters outside the appellate record). Tab F of Horton's appendix includes a DVD containing video footage that was referenced by counsel during the trial court's hearing on the City's motion for summary judgment and plea to the jurisdiction. On October 19, 2007, this Court issued an order denying Horton's motion to include this video in the appellate record because there was no indication that it had been properly admitted into evidence in the trial court.[3] Tab G of Horton's appendix includes an unsigned affidavit by

---

[3] While Horton's motion to include video footage of the Waystation Opry in the appellate record was denied, the Court notes that there was sufficient testimony in the record, particularly Horton's deposition and the affidavit signed by Paul Horton, to ascertain the general nature and decibel level of the Waystation Opry's live-music events.

Horton which describes the video found at Tab F. This affidavit does not appear in the appellate record. Tab I of the appendix includes pages of Middlebrook's deposition transcript that were not included in the record, specifically transcript pages 87, 88, 191, and 194. Materials outside the record that are improperly attached to a party's brief may be stricken and may not be considered on appeal. *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex. App.—Austin 1991, writ denied). As a result, we will strike Tabs F and G from Horton's appendix, as well as the portion of Tab I that includes transcript pages 87, 88, 191, and 194.

**Administrative Remedies**

Section 211.009 of the Texas Local Government Code provides that a local "board of adjustment" may hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of a local zoning ordinance. Tex. Loc. Gov't Code Ann. § 211.009(a)(1) (West 1999). Furthermore, an appeal of a local administrative official's zoning decision may be brought by any "person aggrieved by the decision." *Id*. § 211.010(a). In the City of Smithville, a Type A general-law municipality, the city council acts as the board of adjustment. *See id*. § 211.008(g) ("The governing body of a Type A general-law municipality by ordinance may grant the members of the governing body the authority to act as a board of adjustment under this chapter.").

Horton, by virtue of bringing this suit, clearly considers herself to be a person aggrieved by the presence of the Waystation Opry on the Helmcamps' property. While the city council did not issue any type of official order declaring that the Waystation Opry complied with the zoning ordinance, the record reflects that the Waystation Opry was allowed to operate in a C-2

district based on Page's determination as Public Works Director and Middlebrook's determination as City Manager that the Waystation Opry did not violate the zoning ordinance. Horton concedes that she did not appeal the decision of either Page or Middlebrook to the city council as described in sections 211.009 and 211.010 of the Texas Local Government Code, nor did she attempt to get either decision in writing.

The exhaustion rule requires that plaintiffs pursue all available remedies within the administrative process before seeking judicial relief, and the failure to do so deprives the trial court of jurisdiction. *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 839 (Tex. App.—Austin 2001, pet. denied). Texas Local Government Code sections 211.009 and 211.010 provide administrative remedies regarding local zoning decisions that must be exhausted before such matters may be brought to the courts for determination. *See City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 250 (Tex. App.—San Antonio 2006, pet. denied); *Wynn v. City of Irving*, 770 S.W.2d 10, 11 (Tex. App.—Dallas 1989, no writ) ("It is settled that the administrative remedies provided by Local Government Code section 211.009-.010 . . . must be exhausted before matters regarding nonconforming uses may be brought before the courts.); *Thomas v. City of San Marcos*, 477 S.W.2d 322, 325 (Tex. App.—Austin 1972, no writ). Section 211.010(a) provides that an aggrieved party "*may* appeal to the board of adjustment a decision made by an administrative official." Tex. Loc. Gov't Code Ann. § 211.010(a) (emphasis added). When a statute provides that a party "may" appeal, such language has been interpreted to mean that an aggrieved party may appeal, but if an appeal is taken, it *must* be taken to the administrative entity. *See Grimes v. Stringer*, 957 S.W.2d 865, 869 (Tex. App.—Tyler 1997, pet. denied). It is undisputed that Horton failed to appeal Page and Middlebrook's determinations to the city council.

Horton asserts in her reply brief that any pursuit of administrative remedies "would have been futile and therefore not required." Horton's contention that she is relieved of the exhaustion requirement because she does not expect the city council to grant her a favorable result is unsupported by Texas law. There is an exception to the exhaustion requirement if the available administrative remedies are inadequate or the exhaustion of such remedies would cause irreparable injury. *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 625 (Tex. App.—Austin 2005, pet. denied). However, Horton has not made a showing that the exhaustion of administrative remedies would cause irreparable injury, and in light of the fact that the Waystation Opry has ceased operation, it is unlikely that such a showing could be made. Horton has also failed to establish that the city council lacks the authority to grant the particular relief she seeks. *See id*. ("[P]arties should not be required to pursue the administrative process if the parties would suffer irreparable harm and if the agency is unable to provide relief.").

Horton further argues that because the City "refuses" to enforce its zoning ordinance, there has been no official action by the City and therefore no administrative remedy is available to her. However, the conduct that Horton mischaracterizes as a refusal to enforce a zoning ordinance can be more accurately described as the City's interpretation of its zoning ordinance in a manner adverse to Horton's interests. Furthermore, Horton's argument fails because the statute provides that an aggrieved person may appeal "an order, requirement, decision, or determination made by an administrative official in the enforcement" of a zoning ordinance. Tex. Loc. Gov't Code Ann. § 211.009(a)(1) (West 1999). This language does not require an official order by the city, but merely a determination by an administrative official—a city manager or public works director such as Middlebrook or Page, for example—regarding the enforcement of a zoning ordinance. A

determination by two of the City's administrative officials regarding the enforcement of a zoning ordinance is precisely the action that Horton complains of here. Horton, however, failed to appeal the determination of either Middlebrook or Page to the city council and instead filed suit directly in the trial court. Until the City's official position has been determined through the administrative process created by the Texas Local Government Code, there is no justiciable controversy before the trial court. *See Winn v. City of Irving*, 770 S.W.2d 10, 11-12 (Tex. App.—Dallas 1989, no writ).

On appeal, Horton requests a declaration from this Court that the City must enforce its zoning ordinance. Such a statement would be advisory, and in any case, wholly unnecessary, because the City has stated, both in its brief and at oral argument, that it is in fact enforcing its zoning ordinance in relation to the Helmcamps' property. Therefore, a declaration such as the one Horton requests, assuming it would be legally accurate, would have no practical effect. In support of her request, Horton asserted at oral argument that such a declaration would give the City an incentive to settle this dispute. This Court declines to issue an impermissible advisory opinion stating that the City must enforce its zoning laws simply because Horton believes that such an opinion might intimidate the City into conceding to her in a zoning dispute that has not yet been addressed at an administrative level. *See University of Texas v. Morris*, 344 S.W.2d 426, 429 (Tex. 1961) ("[J]udicial processes cannot be used for purposes of mere harassment in an effort to effect settlements.").

Because Horton failed to exhaust her administrative remedies, the trial court was deprived of subject-matter jurisdiction, and we need not address whether the trial court also lacked jurisdiction on the basis of the City's governmental immunity. *See* Tex. R. App. P. 47.1 (requiring opinions to be as brief as practicable in addressing issues necessary to final disposition of appeal).

10

Similarly, we need not decide the issues related to the City's motion for summary judgment because the jurisdictional issue is dispositive of all claims raised on appeal. The only cause of action falling outside the reach of the exhaustion-of-remedies requirement is the claim of violations of the Texas Open Meetings Act and because that issue was not raised on appeal, it has been waived. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).

## CONCLUSION

Because Horton failed to exhaust her administrative remedies under Texas Local Government Code sections 211.009 and 211.010, we hold that the trial court did not err in granting the City's plea to the jurisdiction. The trial court's order is affirmed.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: January 25, 2008

11